Edward K. McMahon et al.

v.

The People of the State of Illinois.

*Opinion filed February 20, 1901.*

1. Criminal law—*all conspirators are guilty of crime committed by one while carrying out their design.* If two persons conspire together to commit burglary, and in carrying out their common design one of them seeks to take the life of an officer who attempts to arrest them, both are guilty of the crime of assault with intent to kill.

2. Evidence—*what evidence admissible in trial for assault with intent to kill.* On the trial of persons charged with assault with intent to kill an officer who attempted to arrest them while trying to break into a house in the night, evidence as to the condition of the window immediately after their arrest is admissible to show what they had done or were attempting to do when discovered.

Writ of Error to the Circuit Court of Madison county; the Hon. William Hartzell, Judge, presiding.

J. F. Gillham, and John E. Hillskoetter, for plaintiffs in error.

E. C. Akin, Attorney General, (C. A. Hill, and B. D. Monroe, of counsel,) for the People.

Mr. Justice Hand delivered the opinion of the court:

Edward K. McMahon and Elbert J. Parks, plaintiffs in error, were indicted by the grand jury at the March term, 1900, of the Madison county circuit court, for an assault with intent to kill and murder Henry Walter. On the trial they were found guilty and sentenced to the penitentiary.

The plaintiffs in error arrived by a freight train in Edwardsville, in said county, from East St. Louis, on the evening of December 16, 1899. Soon after their arrival they were met by Thomas Morairity, a policeman, and warned to leave the town. Late that night or early the next morning they were discovered by Fritz Fiesler and

Henry Walter, two other police officers, in the act of breaking into the dwelling house of Louis Nimnich, in Edwardsville. Upon seeing the officers they fled. Walter fired his revolver in the air and called upon them to halt. Parks returned the fire. Parks and McMahon separated, Parks being pursued by Walter and McMahon by Fiesler. Several shots were exchanged between Parks and Walter. Parks called out, "I am done with," and fell down upon his face. Walter ran up to him, and when within four or five feet of him Parks whirled over on his side and again shot at him. Upon their arrest Parks had in his possession a revolver, four chambers of which were empty, having been recently fired. No revolver was found in the possession of McMahon, but he had in his pocket five cartridges of the same caliber as the revolver of Parks. They were indicted for burglarizing the house of Nimnich and upon trial were acquitted.

It is first contended that, the plaintiffs in error having been found not guilty of the charge of burglary, Walter and Fiesler had no right to arrest them without a warrant. There is no force in this contention. It is apparent from the evidence in this record that the plaintiffs in error attempted to break into Nimnich's house in the night time, that they were discovered by the officers while in the act, and that their arrest immediately followed. Under such circumstances the officers had the right to make the arrest without a warrant. If it were the law that when an officer discovers a man in the night time breaking into a dwelling house, before he could make an arrest he would be obliged to repair to the office of a magistrate and procure a warrant, few burglars would be arrested, as they would escape before the officer could return.

It is, however, said that plaintiffs in error were acquitted of the technical charge of burglary. The verdict in the burglary case does not change the facts that they were attempting to break into the dwelling house of

Nimnich, that they were caught in the act by the offi-
cers, and in resisting arrest and in an endeavor to escape
they attempted to shoot officer Walter. The verdict in
the burglary case is immaterial in this case.

It is further contended, assuming that Parks and Mc-
Mahon went to Nimnich's house for the purpose of com-
mitting a burglary, there is no evidence on the part of
the State to show that they were there with the common
purpose of resisting with violence any officer who might
try to arrest them. It is apparent from the evidence that
the plaintiffs in error were intimates; that they were
traveling together; that they went to the house of Nim-
nich for the purpose of burglarizing the same; that they
were armed, and that they fired upon the officers before
they separated in their flight. The law is well settled
that if two or more persons conspire together to commit
a burglary, and in the commission of the common design
an officer or other person who may attempt the arrest of
the offenders is killed by one of the conspirators, all who
enter into and participate in the common object for which
they combined together will be guilty of murder. In
*Brennan* v. *People*, 15 Ill. 511, on page 516 we say: "If sev-
eral persons conspire to do an unlawful act, and death
happens in the prosecution of the common object, all are
alike guilty of the homicide. The act of one of them done
in furtherance of the original design is, in consideration
of law, the act of all; and he who advises or encourages
another to do an illegal act is responsible for all the
natural and probable consequences that may arise from
its perpetration." And in *Hanna* v. *People*, 86 Ill. 243, on
page 245 it is said: "If defendant and those indicted with
him had a common design to do an unlawful act, then,
in contemplation of law, whatever act any one of them
did in furtherance of the original design is the act of all,
and all are equally guilty of whatever crime was com-
mitted." And in *Spies* v. *People*, 122 Ill. 1, on page 226 we
held: "He who enters into a combination or conspiracy

to do such an unlawful act as will probably result in the unlawful taking of human life must be presumed to have understood the consequences which might reasonably be expected to flow from carrying it into effect, and also to have assented to the doing of whatever would reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life." In Wharton on American Criminal Law (vol. 2, sec. 998,) the author says: "If a number of persons conspire together to do an unlawful act, and death happens in the prosecution of the design, it is murder in all. If the unlawful act was a trespass, the murder, to affect all, must be done in the prosecution of the design. If the unlawful act be a felony, it will be murder in all, although the death happen collaterally or besides the principal design."

It is claimed that the case of the plaintiffs in error was prejudiced by the admission of evidence showing the condition of the window immediately after the arrest was made. This evidence was admissible to show what the plaintiffs in error had done or were attempting to do at the window in Nimnich's house at the time they were discovered by the officers.

It is further objected that the court erred in admitting in evidence the record in the burglary case against the plaintiffs in error, in which they were found not guilty. We are at a loss to understand how this evidence could have prejudiced the case of the plaintiffs in error, as it tended to prove the main contention of the plaintiffs in error, viz., that they had been acquitted of the charge of burglary.

It is finally insisted that this judgment should be reversed because no intent was shown on the part of the plaintiffs in error to kill Walter. When there is shown a conspiracy to commit a felony, whatever is done by one conspirator in furtherance of the common design is, in contemplation of law, the act of all, and all are equally guilty. Plaintiffs in error were attempting to break into

the house of Nimnich. They were discovered by the officers while in the commission of the offense. The officers, as it was their duty to do under the law, attempted to arrest them, whereupon, with a view to escape, one of the conspirators, being armed, sought to take the life of one of the officers. His act was the act of his co-conspirator, and under the evidence in this record the jury were justified in finding both of plaintiffs in error guilty.

Finding no error in this record the judgment of the circuit court will be affirmed.    *Judgment affirmed.*