## The People of the State of Illinois, Defendant in Error, v. Richard Brockway and John Johnson, Plaintiffs in Error.

1. CONSPIRACY, § 35*—*when surplusage does not render indictment bad.* Allegations in an indictment for conspiracy to assault negroes and injure their persons and property, etc., reciting that a large number of negroes owned real estate and personalty and were employed in numerous occupations in the city in question; that others residing elsewhere passed through said city from time to time and that prejudice existed in the minds of white persons and was openly expressed, etc., even if superfluous, did not render the indictment bad.

2. CONSPIRACY, § 44*—*when failure to name persons conspired against does not render indictment bad.* An indictment for conspiracy to assault negroes and injure their persons and property, etc., was not bad because it did not show a conspiracy to harm a particular person or persons, naming them.

3. CRIMINAL LAW, § 194*—*when permitting certain attorney to assist State's Attorney not error.* The action of the court in permitting a certain attorney to assist the State's Attorney in the prosecution in question was not error on the alleged ground that such attorney had been employed to defend the accused and was receiving money from private parties, where it appeared that such attorney had been appointed Assistant Attorney General of the State, and where there was no sufficient showing in the record that he had ever been in any way employed to defend the accused, and where he denied in positive terms such employment, and where the charge as to receiving money from private persons had no support.

4. CRIMINAL LAW, § 495*—*when number of attorneys to be allowed to appear for State is discretionary.* The questions as to how many attorneys should be permitted to appear for the State, and as to whether the representation in favor of the State is stronger than the representation in favor of the defendant, are largely discretionary.

5. JURY, § 47*—*what constitutes abuse of discretion as to appointing special bailiff to summon persons to fill exhausted panel.* Although under Hurd's Rev. St. ch. 78, sec. 13 (J. & A. ¶ 6843), providing that upon objection to the sheriff summoning persons to fill an exhausted panel the court should appoint a special bailiff

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to summon such persons, the matter of appointing such bailiff may be discretionary, such discretion was abused in a prosecution for conspiracy to assault negroes and injure their persons and property, which had attracted wide interest, and where accused set up among other matters that the deputy sheriffs were close personal and political friends of the sheriff and State's Attorney and were under their control and influence, and that the sheriff and his assistants had aided in the investigation and in the prosecution and conviction of the indicted persons, etc.

6. CONSPIRACY, § 49*—*when error to exclude testimony of defendant.* In a prosecution for conspiracy to assault negroes and injure their persons and property, where certain witnesses had testified to alleged statements of the accused which he in his examination denied having made, to the effect that he had tried to start something the morning of the riot condition in question, where defendant did not deny having had the conversation, it was error to refuse to permit him to state what he claimed he had in fact said, as the record disclosed an offer that what the accused did say was that he had tried to stop something already that morning.

7. WITNESSES, § 207*—*when cross-examination improperly limited.* In a prosecution for conspiracy to assault negroes and injure their persons and property, it was error to limit the cross-examination of a witness for the People who had testified to certain conversations between the accused and another, so as to preclude eliciting of all that was said between the parties.

8. CRIMINAL LAW, § 238*—*when statement of prosecutor in argument not improper.* In a prosecution for conspiracy to assault negroes and injure their persons and property, it was not error to overrule an objection to the statement by the prosecutor in his argument, that never in the history of Illinois had blood flowed so freely as it did on the riotous day in question.

9. CONSPIRACY, § 49*—*when admission of evidence of rioting not error.* In a prosecution for conspiracy to assault negroes and injure their persons and property, it was not error to admit evidence of rioting and its attendant results, without first attempting to connect the accused therewith.

10. CONSPIRACY, § 26*—*when actual participation in acts of violence not necessary to conviction.* In conspiracy to assault negroes and injure their persons and property, the law did not require that the accused should have participated in the actual acts of violence committed by others, in order to be held guilty, as one who is instrumental in instigating acts of violence is just as guilty as though he actually participated in them.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People v. Brockway et al., 215 Ill. App. 219.

Error to the Circuit Court of St. Clair county; the Hon. George A. Crow, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed November 7, 1919.

T. M. Webb and Alexander Flannigan for plaintiffs in error.

Edward J. Brundage, C. W. Middlekauff, James A. Farmer and Hubert E. Schaumleffel, for defendant in error.

Mr. Justice Boggs delivered the opinion of the court.

On August 1, 1917, plaintiff in error, Richard Brockway, and certain other defendants were indicted by the grand jury of St. Clair county, Illinois, on a charge of conspiracy. The indictment consisted of ten counts, the first five of which charge in various ways a statutory conspiracy to assault and injure the persons and property of negroes living and having property and business in the City of East St. Louis, and to thereby compel the negro people to leave said city. The remaining five counts are common-law counts charging conspiracy to commit the same acts of violence, with the same object and purpose.

While a number of defendants were indicted and tried with Brockway, the charges against all the defendants, except Brockway and defendant John Johnson, were disposed of in various ways and are not involved in this proceeding. The case proceeded to trial and the jury returned a verdict of guilty as to defendants Brockway, Johnson and Tisch, and fixed Brockway's punishment at 5 years in the penitentiary and a fine of $1,000. Brockway and Johnson sued out this writ of error, since which time Johnson died, leaving plaintiff in error, Brockway, who for convenience we will hereafter refer to as plaintiff.

Numerous errors were assigned which we will take up in their order. It is first contended by plaintiff that

the allegation in the indictment to the effect "that a large number of negroes and persons of color, men, women and children, resided in the City of East St. Louis and were the owners and in possession of real and personal property, and divers of them were employed in numerous occupations," and the allegation, "that divers negroes and persons of color residing elsewhere than in the City of East St. Louis lawfully passed through said city from time to time upon the highway of said city, and that prejudice existed in the minds of divers white persons residing in said city against negroes and persons of color, and that such prejudice was openly expressed by divers white persons, and that the persons of said negroes and persons of color were rendered unsafe and subject to assault and attack by reason thereof," are immaterial and superfluous and could have no connection with any allegation of conspiracy attempted to be shown by the evidence, and that they laid the foundation for the introduction of immaterial evidence, and therefore rendered the indictment bad. An indictment is not rendered bad because it contains superfluous allegations. We are not, however, saying that these allegations were superfluous, but we merely say that, if superfluous, they do not render the indictment bad.

It is next contended by counsel for plaintiff that the indictment was bad because it did not show a conspiracy to harm a particular person or persons, naming them.

In the case of *Spies v. People,* 122 Ill. 1, the court at page 212 says: " 'A conspiracy may be described, in general terms, as a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose; or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.' (3 Greenleaf on Evidence, sec. 89; *Heaps v. Dunham,* 95 Ill. 583.) It is not necessary, however, that the accused should have been an orig-

inal contriver of the mischief, 'for he may become a partaker in it by joining the others while it is being executed.' (2 Bishop on Crim. Law, 190.) If he concurs, no proof of agreement to concur is necessary. * * * As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is complete. This joint assent of minds, like all other parts of a criminal case, may be established as an inference of the jury from other facts proved; in other words, by circumstantial evidence. 2 Bishop on Crim. Law, 190, and note 7.''

In this case the gist of the allegation in the various counts of the indictment is that by and with a common design and purpose those who participated in the acts of violence purposed thereby to drive from the City of East St. Louis all negroes and persons of color, and their acts of violence were not limited to the negroes of East St. Louis, but extended to all negroes and persons of color who chanced to be in said city at that time. Under the authority of *Spies v. People, supra,* the indictment sufficiently sets forth the charges against plaintiff and the motion to quash was therefore properly overruled.

It is next contended by plaintiff that the court erred in permitting James A. Farmer to assist the State in the trial of said cause for the alleged reason that Farmer had been employed to defend plaintiff in this trial, and further, because it is contended that Farmer was receiving pay for his services from private persons. Plaintiff made a motion supported by an affidavit asking for an order prohibiting Mr. Farmer from appearing as one of the prosecuting attorneys in the case. The People filed a counter-affidavit, made by Farmer, to which was attached an instrument purporting to be an appointment of Farmer as Assistant Attorney General of the State. The court denied said motion and an examination of these affidavits leads us

to the conclusion that the court did not abuse its discretion in its rulings on said motion. There is no sufficient showing in the record that Farmer was in any way ever employed to defend plaintiff in this case. On the contrary, Farmer denied in positive terms such employment, and we hold, therefore, in the state of the record the court did not err in its rulings. *People v. Gerold*, 265 Ill. 448.

There is no evidence in the record whatever to support the contention that Farmer was receiving or was to receive money from private parties for his services in the case.

It is further insisted that the trial court permitted too many attorneys to appear for the State, and that the representation in favor of the State was much stronger than the representation in favor of the defendants. While Mr. Webb was the only attorney who appears of record for plaintiff, at the same time other defendants were being tried on the same charge and were represented by counsel, all of whom were acting in said trial. Under the circumstances we do not think the court abused its discretion in this matter. Matters of this character rest largely in the discretion of the trial court to be decided according to the special facts and circumstances in each case. *People v. Gerold*, 265 Ill. 448; *People v. Gray*, 251 Ill. 431; *Hayner v. People*, 213 Ill. 142.

The next contention made by plaintiff is that the court erred in appointing Gus Meder, one of the deputy sheriffs, as special bailiff to summon jurors to serve on the trial of said cause, the regular panel being exhausted.

The plaintiff in error filed his motion, supported by his affidavit objecting to the sheriff or any of his deputies (naming them), among whom was the said Meder, being appointed special bailiff for summoning persons for jury service. Said affidavit stated among other things "that each of the deputy sheriffs are

close personal and political friends of the Sheriff and State's Attorney and are under their control and dominion and subject to their influence; that prior to the indictment the Attorney General caused his assistants and detectives and investigators to pursue a course of investigation as to persons engaged in the riot, and that said assistants, detectives and investigators have at all times received the assistance of the State's Attorney and of his assistants, and that since the commencement of said investigation the Sheriff and his assistants have aided the Attorney General and State's Attorney in such an investigation, and that as a result numerous persons have been arrested and prosecuted by the State's Attorney and Attorney General; and that during said prosecutions the Sheriff and his deputies have rendered to the prosecution every possible assistance to secure the conviction of persons indicted, and that because of the close personal friendship existing between the Attorney General, State's Attorney and Sheriff, the deputies of the said Sheriff are prejudiced against the interest of this defendant, and because of said prejudice are interested in seeing him convicted. * * * That the deputies (Sheriff's Deputies) frequented the council room and engaged in and advised with the attorneys representing the prosecution in the selection of jurors that would favor the prosecution, and that the deputies are widely known amongst the citizens of said county and that if permitted to serve and summon jurors for the trial of the cause they would select only such persons whom they thought to be satisfactory to the prosecution, and would advise in the rejection or retention of said jurors; that during the progress of the trial of said cause and while attorneys were consulting with defendants in council room, said Underwood came into said room without consent of said attorneys, and when his presence was protested, said Underwood stated

that he had been instructed by the said Meder (deputy) to step inside said council room and remain there; that one of the attorneys representing the defendants approached the said Meder and complained of the presence of said Underwood in said room at said time and was informed by said Meder that he, the said Meder, was acting under the orders of the said Sheriff; that because of the prejudice of the said Sheriff and his deputies and of their interest manifested in the prosecution of the said cause, the defendant states that the Sheriff and deputies are partial and prejudiced against him, and that they would not select jurors from among men who would be impartial.''

Section 13 of chapter 78, Hurd's Revised Statutes (J. & A. ¶ 6843) provides, among other things, that when "the regular panel shall be exhausted, the court may direct the sheriff to summon a sufficient number of persons having the qualifications of jurors to fill the panel for the pending trial; but, upon objection by either party to the cause to the sheriff summoning a sufficient number of persons to fill the panel, the court shall appoint a special bailiff to summon such persons.''

It is contended by plaintiff that the above section of the statute warrants him in making objection to the deputies of the sheriff as well as to the sheriff, and that when such objection is made, the court has no right to appoint a deputy to summon persons for jury service. While counsel for the People contend that the provisions of the statute are limited to the sheriff himself and that it does not include his deputies. Counsel for the State argue that it is necessary that some one with experience should be appointed to do such work, and that there is nothing in the record to show that the plaintiff was prejudiced by reason of Meder being appointed.

Without reference to whether the above section of

the statute is broad enough to include the deputies, as well as the sheriff, so that if objection be made it becomes mandatory on the court to appoint a special bailiff outside of the sheriff's office, or not, still in this case, in view of the facts set forth in the affidavit and of the surrounding circumstances in connection with the case,—the widespread interest taken in the same and the activity that must necessarily have been employed by the sheriff's office in connection therewith, it seems to us and we so hold that even though it should be held a discretionary matter with the trial court, it abused its discretion. We have no doubt that in a county with the population of St. Clair, some person not connected with the sheriff's office possessing the necessary qualifications to serve as special bailiff in this case can easily be found and who would be unobjectionable to either side. We cannot say that the plaintiff has not been prejudiced, and hold that the court erred in its ruling.

It is next contended by plaintiff that the court erred in its ruling on the evidence. The record discloses that certain witnesses produced by the People had testified to statements having been made by the plaintiff which in his examination he denied having made. Plaintiff was then asked what he had in fact said. On objection made to the question the court ruled that if the plaintiff denied having the conversation that he would not then be allowed to state what he claimed he had in fact said. If the plaintiff had denied having the conversation at all the ruling of the court would have been proper, but the record discloses that in certain instances, especially in connection with the testimony of one Nellie Turner, a stenographer in the office of the East St. Louis and Suburban Railway Company, he did not deny having a conversation at the time specified. The witness had been allowed to testify for the People that when she came into the office of the East St. Louis and Suburban Railway Company on the

morning in question, ''Brockway had a newspaper in his hand, and was talking to the other men in the office. I sat down, and I heard him say to either one of the gentlemen that he spoke to—I do not know which one—that he had tried to start something that morning. Mr. Ward had said that there would be something doing, and the statement of Brockway was in reply to Ward's statement.'' Q. ''What did the discussion relate to?'' Objection; overruled; exception by plaintiff. Q. ''Whether it related to what was going on that day or not?'' A. ''It did.'' Q. ''The riot condition?'' A. ''Yes, sir.''

Plaintiff after having denied making the statement that he had started something that morning was asked to state what he in fact did say. Objection was made to the question and was sustained by the court. Counsel for plaintiff then offered to prove by him that at the time Miss Turner stated she heard Ward say, ''there will be something doing,'' that plaintiff replied, ''I have tried to stop something already,'' and that Miss Turner said, ''It looks pretty bad,'' and that plaintiff replied, ''I stopped something already this morning.'' This offer was objected to and the objection sustained. We think the court erred in this ruling for the reason that plaintiff admitted having been present at the time referred to by the witness Nellie Turner and to having had a conversation with Ward in her presence at that time. Plaintiff should have been allowed to have stated everything that was said in that conversation in the presence of Nellie Turner, and which she stated referred to the riot conditions.

There are one or two other instances of a similar character in which the court refused to allow plaintiff to give his version of certain conversations testified to by witnesses for the People. These witnesses had testified that plaintiff had made certain statements, which statements he denied having made but did not

deny having had a conversation at the time referred to. The ruling of the court in reference thereto was erroneous. The court also unduly limited the cross-examination of the witness Nellie Turner. Counsel for plaintiff should have been allowed to fully cross-examine her as to all that was said by plaintiff and Ward in the conversation testified to by her. This the court refused to do. The statements and conversation referred to were recognized by both parties as being very material, and it was important that the ruling of the court thereon should have been substantially correct.

It was next contended by plaintiff that the court permitted counsel for the People to make improper remarks in argument to the jury. One of the statements complained of was made by Assistant Attorney General Middlekauf, who stated: "that never in the history of Illinois has blood flowed so freely as it did on this riotous day in East St. Louis." The court overruled an objection made by plaintiff to this statement. Under the ruling of the Supreme Court in *People v. Parker*, 284 Ill. 272, we find no error in the ruling. On the next statement complained of no ruling was made by the court, so it is not before us for consideration. As to the remaining statement complained of, we are not able to say it was not warranted by the evidence.

It is next contended by plaintiff that the court erred in admitting evidence of rioting and its attendant results without first attempting to connect the plaintiff therewith. It is charged in the indictment that plaintiff, and others, formed a common purpose and were united in a common design to aid and encourage the driving out of East St. Louis all negroes and persons of color and to injure their persons and property. If they combined to accomplish such a purpose by concerted action, the ordinary law of conspiracy is applicable and the acts and declarations of one of them, done in furtherance of the common design, are, in con-

templation of law, the acts and declarations of all. *Brennan v. People,* 15 Ill. 511; *Hanna v. People,* 86 Ill. 243; *Spies v. People,* 122 Ill. 1; *McMahon v. People,* 189 Ill. 222.

In *Spies v. People, supra,* at page 238, the court says: "A further objection is made as to the order in which the trial court permitted certain portions of the evidence to be introduced. It is claimed that some of the acts and declarations proven in the case were allowed to come in before proof was made of the conspiracy or of the connection of the defendants with it. This matter is largely discretionary with the trial judge.

"The proof of conspiracy, which will authorize the introduction of evidence as to the acts and declarations of the co-conspirators, may be such proof only as is sufficient, in the opinion of the trial judge, to establish prima facie the act of conspiracy between the parties, or proper to be laid before the jury, as tending to establish such fact. (1 Greenleaf on Evidence, sec. 111.) Sometimes, for the sake of convenience, the acts or declarations of one are admitted in evidence, before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. (Idem.)

"The rule, that the conspiracy must be first established prima facie, before the acts and declarations of one conspirator can be received in evidence against another, cannot well be enforced 'where the proof of the conspiracy depends upon a vast amount of circumstantial evidence, a vast number of isolated and independent facts; and, in any case, where such acts and declarations are introduced in evidence, and the whole of the evidence introduced on the trial, taken together, shows that such a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before or after the introduction of such acts and declarations.' (*State v. Winner,*

17 Kan. 298.)   The prosecutor may either prove the conspiracy, which renders the acts of the conspirators admissible in evidence, or he may prove the acts of the different persons, and thus prove the conspiracy. Roscoe on Crim. Evidence (7th Ed.) 415.''

It is next contended by plaintiff that the verdict of the jury is against the manifest weight of the evidence, but as there will have to be another trial of this case we will not discuss this assignment of error or express an opinion in reference to the weight of the evidence.

It is also contended by plaintiff that he did not participate in any of the acts of violence and that he should not have been held responsible for the acts of others.   The law does not require that one shall participate in the actual acts of violence.   If one is instrumental in instigating acts of violence, he is just as guilty as though he actually participated in them. *Spies v. People, supra.*

Counsel for plaintiff insist that the court erred in refusing to give to the jury certain instructions offered by him.   We have examined the instructions and are of the opinion, so far as they state correct principles of law, they are covered by instructions given.

For the error in appointing the deputy sheriff as special bailiff to summons persons for jury service over the objection of plaintiff and for the errors committed by the court in its rulings on the evidence, the judgment will be reversed and the cause will be remanded for another trial.

*Reversed and remanded.*