240 So.2d 273 (1970)
Clifton HURST
v.
STATE of Mississippi.
No. 45917.
Supreme Court of Mississippi.
October 12, 1970.
Rehearing Denied November 9, 1970.
*274 R. Jess Brown, Jack H. Young, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Timmie Hancock, Special Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice:
The appellant, Clifton Hurst, was tried and convicted in the Circuit Court of Forrest County, Mississippi, of the crime of using profane and indecent language over the telephone. He was sentenced to serve a term of two years in the state penitentiary.
Appellant has appealed from the judgment and sentence of the trial court and contends on appeal that the judgment should be reversed for the following reasons: (1) The defendant was not advised of his constitutional right to remain silent before being required to submit to a voice identification test. (2) The telephone call was illegal. (3) The State failed to establish a prima facie case of guilt against the *275 defendant. (4) The verdict of the jury is contrary to the overwhelming weight of the testimony.
The testimony in the record in this case reveals that Mrs. Frank Leland, a resident of Petal in Forrest County, Mississippi, began to receive vulgar and indecent telephone calls the last week in April 1969. The calls continued until May 15 and began again on May 20. The calls were made by the same voice and the prosecuting witness was able to inform the officers that the voice was that of a young male person, who said he was black. The telephone company, by the use of an electrical device known as a diode, was able to hold open the telephone connection so as to be able to trace the origin of the telephone conversation. This method was followed and it was discovered that the message originated at phone number 582-8704, which was listed in the name of Alberta Hurst, 805 Arnold Street in Hattiesburg, Mississippi. The officers, having been notified, went to the home of Alberta Hurst. One of the officers requested permission to use the phone and, being permitted to do so, he picked up the phone and found that he could talk to an officer at the home of Mrs. Frank Leland without dialing the number.
The officer made inquiry as to the occupants of the house, and arrested the defendant. Later, the defendant, after having been advised of his constitutional right to remain silent, requested the officers to permit him to talk to the person accusing him. The officer called Mrs. Frank Leland and gave the phone to the defendant, but after saying "hello," he ceased to talk. The officer suggested certain words that had been previously said to Mrs. Leland. She recognized his voice as being that of the person who had been calling her.
There is other testimony by employees of the telephone company showing the method and equipment used in tracing a telephone call. However, without detailing the evidence, we are of the opinion that the testimony preponderates in favor of the verdict of the jury. In fact, any other verdict would have been against the weight of the evidence.
The problem here then is whether or not there are any reversible errors shown in the record.
The appellant contends that the defendant was unlawfully arrested and that the officers "should have had a warrant before walking into appellant's house," and since the officers arrested appellant without probable cause, he was illegally detained at a time when he was "commanded to make a call or be hung"; that the telephone voice identification was, therefore, illegally obtained and such evidence was inadmissible before the jury.
The officer contradicted the testimony of the defendant that the officers "walked into defendant's home." The officer testified that he knocked upon the door at the house address where telephone number 582-8704 was shown to be stationed and that "Clifford came to the door. I talked to him for a minute and his mother came to the door and told me to come in." The officer testified that he was granted permission to use the phone and that he picked up the phone and, without dialing numbers, he spoke to the officer, Bob McGee, who was stationed at the home of Mrs. Frank Leland. At that time the officer had information from Mrs. Leland that the person calling her was a young male Negro, and after learning from whence the phone calls were coming, he arrested the only person there meeting the voice and age description of the person doing the telephoning. The argument of the appellant that there were other male persons in the house who could have done the calling was a jury issue as to the guilt of the defendant. It is not the duty of the arresting officer to determine the guilt of a person before making an arrest. It is his duty to make an arrest where a felony has been committed and the officer has "reasonable ground to suspect and believe the person proposed to be arrested to have *276 committed it." Section 2470 Mississippi Code 1942 Annotated (Supp. 1968); Smith v. State, 229 So.2d 551 (Miss. 1969); McCollum v. State, 197 So.2d 252 (Miss. 1967); Bradshaw v. State, 192 So.2d 387 (Miss. 1966); Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956); Kennedy v. State, 139 Miss. 579, 104 So. 449 (1925). Moreover, the subsequent acquittal of a defendant of the offense charged does not affect the duty of the officer to make the arrest. McMahon v. People, 189 Ill. 222, 59 N.E. 584 (1901).
The right to arrest a person upon a description of the suspect given to the officer by a credible person has long been thoroughly established in this state. See Wheeler v. State, 219 Miss. 129, 63 So.2d 517 (1953).
The United States Supreme Court made a salutary comment in United States v. Santos, 36 Philippine 853, 855, 6 C.J.S. Arrest § 6, at 587, Note 92 (1937), wherein it is said:
"One should, however, not expect too much of an ordinary policeman. He is not presumed to exercise the subtle reasoning of a judicial officer. Often he has no opportunity to make proper investigation but must act in haste on his own belief to prevent the escape of the criminal. To err is human. Even the most conscientious officer must at times be mislead. If, therefore, under trying circumstances and in a zealous effort to obey the orders of his superior officer and to enforce the law, a peace officer makes a mere mistake in good faith, he should be exculpated. Otherwise the courts will put a premium on crime and will terrorize peace officers through a fear of themselves violating the law."
We are of the opinion that the arresting officer had probable cause to arrest the appellant under the circumstances detailed by the record in this case.
Appellant's contention that his constitutional rights were not explained to him before he was required to make a telephone call to the prosecuting witness is, in our opinion, not well taken because, although there is a conflict of testimony, the officer testified that the defendant asked to call the person who accused him and he testified that he had warned the defendant of his constitutional rights. Where there is a conflict of testimony as to whether or not a warning has been given to a prisoner, the issue of law is first addressed to the sound discretion of the trial judge as to its admissibility in evidence. If the testimony is admitted, it becomes an issue of facts for the determination of the jury.
Appellant seriously contends that the telephone voice identification of the defendant was in violation of his constitutional right to remain silent. We do not, however, agree with the argument that permitting a prosecuting witness to hear the voice of a suspect is, in effect, requiring the defendant to testify against himself. It has been the rule from early times that testimony of identification of a person by having heard his voice has been regarded as being legitimate and is competent to establish the identity in both criminal and civil cases. 20 Am.Jur. Evidence 351 (1939).
The rule has been followed in this state in Lee v. State, 242 Miss. 97, 134 So.2d 145 (1961) and Pickett v. State, 164 Miss. 142, 144 So. 552, rev. 164 Miss. 142, 143 So. 692 (1932).
There has been some question raised by the various courts in this country as to whether or not a voice demonstration may be violative of one's constitutional right not to testify against oneself when identical words used during the commission of the crime are required or are forced to be repeated by the prisoner for the purpose of identification. See the cases collected in 16 A.L.R.2d 1322 (1951).
*277 In the case of Schmerber v. California, 384 U.S. 757, 86A S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court said:
It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. * * * (384 U.S. at 763, 764, 86A S.Ct. at 1832, 16 L.Ed.2d at 916)
The Schmerber case cited Weintraub, Voice Identification, Writing Exemplars and the Privilege Against Self-Incrimination, 10 Vand.L.Rev. 485 (1957).
In the Vanderbilt Law Review the writer reviewed the cases on the subject of forced voice identification as being violative of the constitutional privilege against self-incrimination, and has suggested that the privilege against self-incrimination may be applied to any statement which an accused person is compelled to make, and which may aid in proving that the accused committed a crime for which he could be prosecuted. See 10 Vanderbilt Law Review 485 (1957).
In the instant case, however, we do not deem it necessary to determine the issue of whether or not suggested statements in the presence of witnesses for the purpose of voice identification violate the constitutional right of an accused not to incriminate himself because the accused testified he was in no way intimidated, he was not forced, and that the officer could not make him talk on the phone, although he did say the officer said he could be "hung."
On the other hand, the officer testified that the accused requested the right to talk to his accuser and he only suggested words to be said when the defendant said he did not know anything to say.
The appellant contends that the constitutional right to have counsel was violated because he was required to make a call on the telephone without the advice of counsel. The trouble with this argument is that the record reveals a disputed statement of facts as to whether or not the appellant was forced to make a telephone call, and whether or not he was warned of his right to counsel. We do not believe the trial judge abused his discretion in permitting this evidence to be given to the jury.
We find no reversible error in the record of this case and, for that reason, the judgment of the trial court should be and is hereby affirmed.
Affirmed.
ETHRIDGE, C.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.