549 So.2d 1316 (1989)
Charles E. GRAY, Jr.
v.
STATE of Mississippi.
No. 07-KA-58562.
Supreme Court of Mississippi.
September 20, 1989.
*1317 Gerald Chatham, Hernando, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice, Mike C. Moore, Atty. Gen., and Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
Considered in this appeal are questions relating to the propriety of a multiple count indictment and sufficiency of evidence of voice identification of the defendant. Charles E. Gray, Jr. was convicted in the Circuit Court of DeSoto County on eight counts of making a phone call with the intent to annoy, abuse, threaten or harass, pursuant to § 97-29-45(1)(c) Miss. Code Ann. (Supp. 1988). The trial court imposed eight (8) consecutive two-year sentences, but suspended seven (7) of them. The appellant now perfects his appeal to this Court, assigning as error the following:
(1) THE TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, AND JUDGMENT NOTWITHSTANDING THE VERDICT AS TO COUNT ONE OF THE INDICTMENT.
(2) THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL DUE TO IMPROPER USE OF "OTHER CRIMES" EVIDENCE.
(3) THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL DUE TO IMPROPER CLOSING ARGUMENTS BY THE PROSECUTOR.
(4) THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-3.
(5) THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-1, THEREBY TREATING WHAT SHOULD HAVE BEEN ONE CHARGE AS SEVERAL CHARGES (COUNTS II-VIII).

I.
On January 6, 1987, at 9 a.m., nineteen year old Melissa Charnes was awakened by *1318 the sound of a ringing telephone at her home in Southaven. An unidentified male voice told her to "hurry up and get a pen and a piece of paper to write down some stuff." The man then informed her that he had kidnapped her father, who "was not in any sort of pain," and who would be released unharmed if Charnes would "go to the bank and get money." He threatened to "get rid of" Charnes' father if she refused to obey his requests. Finally, the man insisted that Charnes repeat some "very vulgar" words and instructed her to remove her clothing. The conversation lasted approximately fifteen minutes. Charnes hung up the phone, called her mother, called her father to verify his safety, and then reported the call to the sheriff's office.
Beginning at about 2 a.m. during the early morning hours of January 19, 1987, Juanita Hunt, one of the appellant's neighbors, received a series of seven phone calls. She testified at trial that she was familiar with the appellant's voice. The Hunts had an Irish Setter dog and the appellant owned a Pit Bull. Several prior conversations had transpired between Mrs. Hunt and the defendant relative to disputes over the dogs' activities. Having had these conversations previously, Mrs. Hunt stated unequivocally that she knew Gray's voice and it was Gray who had called her that morning and whose voice appeared on a tape recording she had made of the conversations. Two to three weeks later, she allowed Melissa Charnes to listen to the tape. Charnes recognized the voice as that of the man who had telephoned her on January 6. At trial, she testified positively that the voice on the tape was "the same without a shadow of a doubt." The tape recording was also introduced into evidence at trial.
The appellant was indicted under § 97-29-45(1)(c) of Miss. Code Ann. (Supp. 1988), which states:
§ 97-29-45. Profane and indecent language over telephone; jurisdiction.
(1) It shall be unlawful for any person or persons: .. .
(c) To make a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten or harass any person at the called number;
He was charged under Count One with the phone call to Melissa Charnes and the remaining seven counts concerned the series of phone calls he made to Juanita Hunt. The jury found Gray guilty on all counts and he was sentenced to two year prison terms on each of the eight counts, to run consecutively. However, the trial court suspended the sentence for counts two through eight of the indictment provided that Gray comply with certain probationary terms. Gray then perfected his appeal to this Court.

II.

DID THE TRIAL COURT ERR IN FAILING TO GRANT A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, AND JUDGMENT NOTWITHSTANDING THE VERDICT AS TO COUNT ONE OF THE INDICTMENT?
Under this first assignment of error, the appellant challenges the sufficiency of the evidence used to convict him under Count One of the indictment.
The standard of review used by this Court for assessing peremptory instructions and directed verdicts is the same:
In passing upon a motion for a directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled.
Guilbeau v. State, 502 So.2d 639, 641 (Miss. 1987).
The standard of review used for judgment not withstanding the verdict is closely related to that used for peremptory instructions and directed verdicts:
The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. It is in effect a renewal of the defendant's request for a peremptory instruction made at the close *1319 of all the evidence. It asks the court to hold, as a matter of law, that the verdict may not stand and that the defendant must be finally discharged.
Where a defendant has moved for jnov, the trial must consider all of the evidence which supports the state's case  in a light most favorable to the state. The state must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences `so considered' point in favor of the defendant with sufficient force that reasonable men could not have found `beyond a reasonable doubt' that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion  that is, evidence of such quality and weight that having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions  the motion should be denied.
Parker v. State, 484 So.2d 1033, 1036 (Miss. 1986).
Keeping these various standards of review in mind, a closer examination of the testimony is in order. The appellant challenges certain alleged defects in the proof, which this Court will now examine. First, the fact that Melissa Charnes was unacquainted with the appellant is inconsequential. The language of the statute does not require that the person who receives the phone call have actual personal knowledge of who made the call. Juanita Hunt did know the defendant and was familiar with his voice. She was certain the voice on the tape belonged to him, and Charnes was equally certain that the voice belonged to the person who phoned her on January 6th. It is also most critical to note that the conversation between Melissa Charnes and the appellant lasted for fifteen minutes, more than enough time to become acquainted with the sound of someone's voice.
"It has been the rule from early times that testimony of identification of a person by having heard his voice has been regarded as having been legitimate and is competent to establish the identity in both criminal and civil cases." Hurst v. State, 240 So.2d 273, 276 (Miss. 1970). Furthermore, the validity of such identification testimony "is for the jury to determine." Estes v. State, 533 So.2d 437, 439 (Miss. 1988); Warren v. State, 456 So.2d 735, 738 (Miss. 1984) (citing Sparks v. State, 412 So.2d 754 [Miss. 1982] and Pickett v. State, 164 Miss. 142, 144 So. 552 [1932]). In the case at bar, the jury apparently believed that the voice on the tape was that of the appellant and that Charnes' identification of that voice was reliable; there is no basis to disturb this finding. Secondly, Gray contends that the alibi testimony by his parents is fatal to the state's case. This argument misses the mark. An alibi defense simply raises an issue of fact to be resolved by the jurors, who are under no obligation to accept the defense. Lee v. State, 457 So.2d 920, 924 (Miss. 1984) (citing Tubbs v. State, 402 So.2d 830, 834-835 [Miss. 1981]).
Assuming for the moment that the jury was obligated to believe the testimony of the appellant's parents, reasonable and fair-minded jurors could still have found Gray guilty. As the court noted in denying the request for a peremptory instruction:
Likewise, as far as the alibi testimony put on by the defendant ... I am satisfied that it is a jury issue. Regarding the alibi, basically what the defendant's father and mother could say was that he went hunting on that particular day and he came home with deer but, they both, quite candidly, stated that they could not state under oath where this defendant was about 9:00 o'clock on January 6, 1987. They couldn't identify his location and where he was, what he was doing. All that they could say was that he evidently did go deer hunting on that particular day because he came home sometime later in the day with two deer.
It is the opinion of this Court that there was sufficient evidence presented to *1320 justify overruling the appellant's various motions for a peremptory instruction, directed verdicts, and judgment notwithstanding the verdict. Therefore, this Court is of the opinion that there is no merit to this assignment of error.

III.

DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL DUE TO IMPROPER USE OF `OTHER CRIMES' EVIDENCE?
During the state's direct examination of Juanita Hunt, the tape recording of the conversations of January 19 was admitted into evidence and played for the jury. Soon thereafter, the following exchange occurred:
Q. I want you to tell me, if you can, what the defendant meant when he accused you of having him arrested?
Q. Did you ever have him arrested?
A. Yes, sir. We had him arrested January 8th.
Q. January 8th. Okay.
A. For simple assault.
In chambers, defense counsel made the following objection:
Judge, at this point the defendant would, again object, like we moved in limine, to exclude certain matters that come up out there and so forth. Now, this woman has blurted out that this man was charged, by her, with simple assault, which is specifically another criminal act outside of anything in this indictment.
The prosecutor responded, "I don't think it's evidence of another crime. It's an explanation of what the defendant said over the telephone about being arrested, and what he thought about that." Having heard the arguments presented by both sides, the trial court ruled as follows:
Well, as to the last remark the witness made, I'm going to sustain the objection and I will instruct the jury to disregard it. Quite frankly, it was, in my opinion, probably, it was unresponsive to the question. She had already answered the question and before Mr. Kelly could ask another question, she paused a minute and went further and said, "simple assault." I think she was saying, "yes, we had him arrested," and then she paused and said, "for simple assault." To that extent I will sustain the objection and instruct the jury to disregard it.
(Emphasis added).
The defense counsel's motion for a mistrial was overruled. The trial court then instructed the jury "to disregard the last remark by the witness regarding the charges which were lodged against this defendant. It has nothing to do with this particular case." No juror indicated an inability to follow this directive.
It is the opinion of this Court that the court's actions were sufficient to remove any prejudice emanating from the witness's unsolicited remark. Payne v. State, 462 So.2d 902, 903-4 (Miss. 1984) (court's admonition removed prejudicial effect of witness's spontaneous reference to another crime); Hughes v. State, 376 So.2d 1349, 1352 (Miss. 1979) (unresponsive answer cured by court's instruction); Lockridge v. State, 252 Miss. 185, 193, 172 So.2d 192, 196 (1965) (court's action removed harmful effect of statement made "thoughtlessly," "spontaneously," and "not at the suggestion of the district attorney").
It is also true as a general principle that the jury is presumed to have followed the instructions of the trial court. Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985). "[U]nless egregious circumstances or bad faith of the prosecutor is present, a mistrial should not be entered." Boches v. State, 506 So.2d 254, 258 (Miss. 1987).
During the hearing on pretrial motions, the district attorney told the court he had "cautioned" his witnesses against mentioning other crimes committed by the appellant. In this context, it appears the witness's answer was spontaneous and unresponsive; therefore, the prosecutor had little or no control over it. The court correctly refused to order a mistrial and consequently there is no merit to this assignment of error.
*1321 However, the foregoing portion of this assignment of error relating to evidence of other crimes does identify an error that has not been distinctly specified on this appeal. Although the error was not assigned here, it is a matter addressed by defense counsel by pre-trial motion for severance of all counts filed in the trial court, but not acted upon. The motion in the trial court sufficiently preserved this point for appellate review.
The threshold question here is this Court's authority to address an issue not assigned as error. Under the proper circumstances, this Court has a well established body of case law authorizing the noticing of an issue on its own motion when "plain error" is noted. Mississippi Supreme Court Rule 28(a)(3) states:
No issue not distinctly identified shall be argued by counsel, except upon request of the Court, but the Court may, at its option, notice a plain error not identified or distinctly specified.
Our cases are also clear on this point. Johnson v. State, 452 So.2d 850, 853 (Miss. 1984); House v. State, 445 So.2d 815, 820 (Miss. 1984); Hooten v. State, 427 So.2d 1388 (Miss. 1983); Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965).
Since this Court's authority to note "plain error" is clear, this Court now determines that the present indictment joining these eight counts together is an appropriate case to exercise our authority. Johnson, supra. It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice. House, supra. The problem here deals with both the principle of a fair trial and with the defendant's presumption of innocence. The error arises from the multi-count indictment against this defendant charging two different crimes on two different dates against two different victims. The new statute permitting multi-count indictments, Miss. Code Ann. § 99-7-2 (Supp. 1988), effective July 1, 1986, states in pertinent part:
Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
Although § 99-7-2 permits the joinder of several offenses under one indictment, this option is subject to certain important restrictions. The language of the statute itself makes it clear that the joinder of separate offenses in one indictment is proper only when the offenses are based on the same act or transaction or when the offenses in question are part of a common scheme or plan. In the case at bar, neither of these requirements are met.
Under the language of the indictment used at trial, Count One was the telephone call to Melissa Charnes on the morning of January 6, 1987. Counts Two through Eight were the seven phone calls made to Juanita Hunt on January 19, 1987. It cannot be said that Count One was part of the same "act or transaction" as the other seven calls  they were separate and distinct acts, with different victims, different subject matter, and they occurred two weeks apart. Nor can they be said to constitute parts of a common plan or scheme. The conversation with Melissa Charnes lasted approximately fifteen minutes and included a dialogue between the victim and her tormentor. As part of the dialogue, the caller informed Ms. Charnes that he had kidnapped her father and he also made sexually suggestive remarks to her.
In contrast, the series of calls to Ms. Hunt were comprised of extremely brief encounters, often without any conversation at all. The caller rarely spoke, and when he did, his message was usually brief and the subject matter was totally different from the conversation with Melissa Charnes. Under the circumstances, the calls to the two women cannot be characterized as being part of a common scheme or plan.
Both legal commentators and the case law of various jurisdictions have addressed the proper circumstances for the joinder of multiple offenses under one indictment. *1322 One commentator has written that although two or more offenses may be joined under one indictment, the practice should not be allowed when to do so would prejudice the defendant. 3 C. Torcia, Wharton's Criminal Procedure § 297, at 141-42 (12th ed. 1975). Others have noted that the joinder of multiple offenses under one indictment is a common practice, while criticizing it at the same time. "[T]he joint trial of offenses creates a significant risk that the jury will convict the defendant upon the weight of the accusations or upon the accumulated effect of the evidence." 2 W. LaFave and J. Israel, Criminal Procedure § 17.1(b) at 354-55 (1984).
The practice of joining multiple offenses has also been addressed in the case law of various jurisdictions. In Drew v. United States, 331 F.2d 85 (D.C. Cir.1964), the Court noted that the joinder of offenses could result in the jury using evidence of one crime to "infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged." 331 F.2d at 88. The Court noted that such activity would prejudice the defendant's right to a fair trial. However, the Drew Court later held that the joinder of offenses was not improper so long as the evidence from each crime was "simple and distinct" and would be admissible in separate trials. Id. at 91. See also, Bayless v. United States, 381 F.2d 67, 72 (9th Cir.1967); Friday v. State, 462 So.2d 336, 338 (Miss. 1985); Ostrowski v. State, 665 P.2d 471, 484 (Wyo. 1983); Tabor v. State, 616 P.2d 1282, 1284 (Wyo. 1980).
In U.S. v. Foutz, 540 F.2d 733 (4th Cir.1976), the Court noted that "it would seem that some degree of prejudice is necessarily created by permitting the jury to hear evidence of both crimes." 540 F.2d at 736. See also, U.S. v. Dennis, 625 F.2d 782, 802 (8th Cir.1980). The Court also addressed the "simple and distinct" test articulated in Drew.
The `simple and distinct' test articulated in Drew may well be an appropriate standard for measuring the danger of prejudice resulting from the jury's confusing and cumulating the evidence. It does not address itself, however, to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers that finding probative of his guilt in another.
Id. at 738, n. 5. See also, Commonwealth v. Morris, 493 Pa. 164, 425 A.2d 715, 719 (1981).
This fact assumes great importance in the case at bar because the majority of proof used to convict Gray under Count One (the call to Melissa Charnes) was provided by the taped conversations between Juanita Hunt and the caller. There was no other proof independently connecting Gray to Melissa Charnes. The problems created by this factual pattern have also been addressed under case law.
[I]f evidence of the identity of the criminal actor is weak or tenuous, revelation that he has committed an unrelated similar crime may, by reason of its tendency to distract the jury from the identification issue, tempt it to compromise or ignore that critical element of the case while focusing on the clearer proof of the defendant's other misconduct. The dangerous result may well be, and indeed is likely to be, the jury's conclusion that whatever the strength of the identification evidence in the case, the defendant is demonstrably a bad person and should be imprisoned anyway.
People v. Golochowicz, 413 Mich. 298, 319 N.W.2d 518, 528 (1982).
The Mississippi Rules of Evidence also support the view that certain evidence, despite its arguable relevancy, may not be introduced at trial due to its prejudicial effect. Rule 403 reads as follows:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
The views expressed under Rule 403 concerning the possible prejudicial effect of evidence at trial have been used by courts in the context of defendants charged with *1323 multiple offenses. State v. Plaster, 424 N.W.2d 226, 231-32 (Iowa 1988); Tabor v. State, 616 P.2d 1282, 1284 (Wyo. 1980). The case now before this Court is tailormade for the application of Rule 403. The only evidence linking Charles Gray to the telephone call to Melissa Charnes was the tape made by Juanita Hunt. There is a very great probability that had it not been for Ms. Hunt's tape recording, Gray would never have been convicted of making the harassing phone call to Melissa Charnes because she admitted at trial that she did not recognize the voice at the time of the call. No other evidence linked Gray to the phone call to Melissa Charnes.
Several of the reasons listed under Rule 403 as justification for prohibiting the introduction of certain information into evidence apply here. The use of Juanita Hunt's tape recording, and, more specifically, Melissa Charnes' reliance thereon, was without a doubt unfairly prejudicial, served only to confuse the issues in the case, and may have mislead the jury's deliberations, all in violation of Rule 403. Since the evidence of the crimes would be inadmissible in separate trials, this Court holds that Count One should not have been joined with Counts Two through Eight. Drew, supra.
As a consequence, Gray's rights were adversely affected, and this Court vacates Gray's conviction under each of the counts charged. However, the reversal is without prejudice, meaning the State is free to retry Gray on each of the charges. The series of phone calls to Juanita Hunt were properly joined under one indictment, since they were based on the same act or transaction, and/or were part of a common scheme or plan, pursuant to the language of § 99-7-2 M.C.A. Any charges by the State for the phone call to Melissa Charnes must be severed from the others.

IV.

DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL DUE TO IMPROPER CLOSING ARGUMENTS BY THE PROSECUTOR?
During closing argument, the prosecutor stated that the telephone call to Melissa Charnes was "a form of terrorism ... that is employed by a coward." Later, Gray was labelled "a coward and a terrorist ..." The defense objected; the court sustained this objection and admonished the jury to disregard these characterizations.
In McFee v. State, 511 So.2d 130 (Miss. 1987), the prosecutor characterized the defendant who had stabbed the victim to death after having raped her, as "animalistic." The court sustained the objection, and instructed the jury to disregard the remark, but refused to order a mistrial. This Court affirmed, holding that:
Where a prosecutor engages in conduct such that the defendant's right to a fair trial is substantially impaired, and where the trial judge improperly fails to grant a mistrial, this Court will reverse on appeal ... Yet, a timely objection, promptly sustained with an instruction to disregard the prosecutor's comments, is generally sufficient to dissipate any taint of prejudice... .
Clearly, it is impermissible for the prosecutor to abuse or vilify the defendant in his argument before the jury, thereby appealing to its passion or prejudice ... Yet, consistent with the authority cited above, there is no error where, as here, the trial judge sustains the objection, instructing the jury to disregard the comment.
511 So.2d at 135. (Citations omitted).
It is the opinion of this Court, that in this case, a strong argument can be made that in this context of this case, the terms used by the prosecutor were accurate to describe the sort of person who calls someone up for the purpose of making harassing phone calls. Making harassing phone calls is a cowardly act, and this Court has upheld similar conduct by prosecutors in other cases. In Fisher v. State, 481 So.2d 203 (Miss. 1985), the prosecutor characterized a rapist as one who "hides," "preys on women" and "takes advantage of the weak." Id. at 224. This Court observed that the district attorney was simply "attempting to describe in less than *1324 complimentary terms, the sort of person who would commit the sort of crime involved in this case. This is a perfectly legitimate final argument." Id. at 225.
Similarly, in Wilcher v. State, 448 So.2d 927, 936 (Miss. 1984), the prosecutor referred to the defendant as a "butcher." This Court upheld the denial of the motion for mistrial, observing, "there were over twenty wounds on the body of the victim." The characterization of the appellant in this case as a coward, and one who commits terroristic acts, appears to fall within the same rule quoted in Fisher, supra and Wilcher, supra. Therefore, this Court perceives no error in the trial court's ruling. There is no merit to this assignment of error.

V.

DID THE TRIAL COURT ERR IN REFUSING INSTRUCTION D-3?
Instruction D-3, a circumstantial evidence instruction, was requested by the appellant and refused by the trial judge. The instruction reads as follows:
The court instructs the jury that if you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty.
This Court has held that where there is direct evidence of a crime, the circumstantial evidence instruction need not be given. Mack v. State, 481 So.2d 793, 795 (Miss. 1985). In the case sub judice, one of the victims, Juanita Hunt, testified unequivocally that the voice on the other end of the telephone line was that of the appellant, who lived in her neighborhood. In turn, Melissa Charnes positively identified the voice on the tape as the same one she heard on January 6. The general rule, followed in Mississippi, is that voice identification is direct evidence. Warren v. State, 456 So.2d 735, 737-738 (Miss. 1984); Sparks v. State, 412 So.2d 754, 757 (Miss. 1982); Lindsey v. State, 279 So.2d 913, 914 (Miss. 1973).
The rule establishing voice identification as direct evidence is especially appropriate in this case where the gravamen of the offense is of an auditory, rather than visual, nature. Therefore, even the victim of the crime cannot technically be an "eyewitness." In this case, Gray emphasizes the fact that Melissa Charnes was not previously familiar with his voice. This situation has been addressed in McInturf v. State, 544 S.W.2d 417 (Tex.Cr.Ap.. 1976).
The difference between recognition of a familiar voice and a voice heard only at the time of, and subsequent to, the offense goes to the weight and probative value of the voice identification testimony and, as such is a fact for the determination of the trier of fact.
Id. at 419. The weight to be given such testimony does nothing to change its status from direct to circumstantial.
The jury in this case was instructed that the state was required to prove all the elements of the offenses beyond a reasonable doubt. This Court is of the opinion that such instruction was sufficient and does not merit the granting of this assignment of error.

VI.

DID THE TRIAL COURT ERR IN GRANTING INSTRUCTION S-1, THEREBY TREATING WHAT SHOULD HAVE BEEN ONE CHARGE AS SEVERAL CHARGES (COUNTS II THROUGH VIII)?
Instruction S-1, challenged here by the appellant, lists each of the eight charges against the appellant separately. He now contends that all seven counts should have been combined under one count, pursuant to § 97-29-45(1)(e) Miss. Code Ann. (Supp. 1988). The appellant is incorrect in making this assertion.
Section 97-29-45(1)(c), under which the appellant was indicted, reads as follows:
(1) It shall be unlawful for any person or persons:...
(c) to make a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten or harass any person at the called number.
*1325 The appellant contends that he should have been indicted under § 97-29-45(e), which reads as follows:
(1) it shall be unlawful for any person or persons:...
(e) to make repeated telephone calls, during which conversation ensues, solely to harass any person at the called number.
The language of the indictment under which Gray was charged makes it quite clear that he was being charged pursuant to subsection (c) rather than subsection (e) of § 97-29-45.
In Cumbest v. State, 456 So.2d 209 (Miss. 1984), this Court made it clear that "even if the criminal statutes cover the same criminal act in virtually the same language ... and one provides for a greater penalty than the other, the State ... may proceed under either ... so long as the indictment is clear and unequivocal." Id. at 223. See also Rowland v. State, 531 So.2d 627, 631 (Miss. 1988). For these reasons, it is the opinion of this Court that this assignment of error is without merit.
For the foregoing reasons, this Court vacates all convictions and remands to the Circuit Court of DeSoto County, but without prejudice to the State's taking whatever further action it finds appropriate, so long as Count I is severed on retrial.
CONVICTION AND SENTENCE UNDER ALL COUNTS VACATED, WITHOUT PREJUDICE.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.