197 So.2d 252 (1967)
Malcolm McCOLLUM
v.
STATE of Mississippi.
No. 44394.
Supreme Court of Mississippi.
April 3, 1967.
Suggestion of Error Overruled April 24, 1967.
*253 Albert Sidney Johnston, III, Pascagoula, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
JONES, Justice:
Appellant was convicted in the Circuit Court of Jackson County of possession of burglary tools, from which conviction he appeals.
Two errors of the lower court are alleged, to-wit: (1) The tools shown to the jury should not have been introduced into evidence because they were obtained as a result of an illegal arrest; and, (2) The court erred in not granting a mistrial because of alleged prejudicial statements made by the district attorney in his closing argument.
We affirm the case.
Miss Elizabeth Wagner testified that Davis Street is between her home and Griffith Street Grocery in Moss Point. On March 18, 1966, between 2:30 and 3:00 a.m., an automobile stopped just outside her window. Three figures left the area of the car and went to the front of the grocery. There she could not see them, but she heard a noise and thereupon called the police. The car stopped about 30 feet from where she was sleeping. It was an old model, dark colored car. She did not know the make. There was no other activity about the store or her home.
Mr. Bobby L. Smith, a captain of police of the City of Moss Point, testified he received a police radio call while cruising on Main Street about two blocks away on the night of March 18, 1966, regarding a disturbance at the Griffith Street Grocery. The information over the radio was there was an attempted breaking and entering; that there was involved a dark colored, old model car with three subjects in it. As he proceeded toward the grocery he met an old model 1958 Chrysler, dark colored  either black or blue  containing three people. He put this information on the radio, but did not stop the car. Proceeding to the store, he found the front door lock lying on the steps. It had been cut. After checking the store and discovering the lock had been cut, he, as he expressed it, "put it back over the air" that he had met a '58 model dark Chrysler on Bellevue Street. This was the only car in the area. No one is supposed to be on this radio system except the police, including the Pascagoula force, a few miles from Moss Point.
Mr. Leffie Fountain was a member of the Police Department of the City of Pascagoula. He was on duty on the morning of March 18, 1966, and heard Captain Smith of Moss Point say on the radio to be on the alert for a black or dark colored Chrysler with three subjects in it  either a 1957 or 1958 Chrysler. Mr. Fountain had been advised by the police department radio that there had been a burglary committed at the Griffith Street Grocery in Moss Point. He was advised that Captain Smith had seen this 1957 or 1958 black or blue Chrysler going east on Bellevue Street, *254 near the grocery store. Not five minutes after receiving the call from Captain Smith the witness located the automobile at Highway 90 and Telephone Road. When he first saw the car, it was traveling south on Telephone Road but then turned right onto Highway 90 going toward the toll bridge and Pascagoula. The witness turned and followed the automobile. He stopped it just before reaching the toll bridge. The defendant was driving the car. About the time the car was stopped, Lt. Howard and Patrolman Doggett pulled their patrol car behind the witness. When the witness stopped the car, then he got out and with Lt. Howard went over to the car where the defendant was. There they saw in the car a regular potato sack facing the direction of the witness with the opening so that the witness could see several crowbars, or what appeared to be crowbars. At this point, objection was made and the jury was retired. In the absence of the jury, he testified that on the back floorboard of the automobile he saw a sack. He saw this by looking through the glass. One end of the sack was open and atop the sack was a long crowbar. From where he was, looking through the glass, he could see what appeared to be several other crowbars, several hammers, or the end of hammers, a wire-looking thing, and other tools, including a bolt cutter. Lt. Howard placed the men under arrest and notified the defendant that he was under arrest. After defendant was arrested, the witness examined the tools more closely and stated that he could identify them. When he first saw the automobile, he made a U-turn and started back in the direction it was going. The witness said that he had seen the car some distance east from where it was stopped, but that his force made a practice of calling in the tag number when they had reason to believe there might be something about a car. It took some time for the desk sergeant to hear the tag number and write it. When he stopped the car by the use of his red light, he got out of the patrol car and the defendant got out of his car. The witness walked to the rear of the defendant's car and defendant got this driver's license and the witness talked to him.
Witness checked the driver's license and asked for his registration papers. Witness checked them and they corresponded with the name on the driver's license. About that time, Lt. Howard had gotten there alongside the car. The defendant objected at this point to introduction of the burglary tools on the ground of an illegal arrest and an unlawful search. The court overruled the objection and the trial proceeded resulting in the conviction of the defendant as aforesaid.
Defendant asserts that the arrest of the defendant was unlawful, and, therefore, the tools obtained as a result of said arrest were inadmissible in evidence.
There can be no question as to the reliability of the person from whom the arresting officer received his information. It came from the police department. There is no attempt to say Miss Wagner, who conveyed the first information to the police, was an unreliable person.
The police did not rely alone upon the message from Miss Wagner, but Captain Smith proceeded to investigate. He found there had actually been a breaking and entering; that there was a car in the vicinity which had three people in it, of the same general description as that given by Miss Wagner, and the only car in the area.
Mississippi Code 1942 Annotated section 2470 (1956) provides:
"An officer * * * may arrest any person without warrant, * * * when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; * * *"
In the annotation to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, 1736-1739 (1959), we find the following statement:
"The existence of `probable cause' or `reasonable grounds' justifying an arrest *255 without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case. The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest. Standards which may be reasonable for the apprehension of bank robbers may not be reasonable for the arrest of narcotics peddlers.
"`Probable cause' or `reasonable grounds' justifying an arrest without warrant exist where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a narcotics offense has been or is being committed. It is not required that probable cause be established solely by facts within the personal knowledge of the arresting officer. A combination of information and personal knowledge may raise the inference beyond opinion, suspicion, and conjecture to reasonable probability. All information in the agents possession, fair inferences therefrom, and observations made by him are pertinent."
Of course, the assertion that the arrest was unlawful is based upon the claim that the arresting officer had no probable cause to make the arrest. The arresting officer had information from officers as heretofore stated that at least an attempted burglary had been committed in Moss Point; that an old model, dark colored Chrysler automobile was in the vicinity immediately after the attempted entry; that it was the only car in the area, and that it was occupied by three persons. With this information, we are satisfied that the officers had sufficient probable cause to stop the car and that having stopped the car on probable cause and seeing the tools by looking through the windows that there could have been no unlawful search.
Appellant places some emphasis on the fact that the arresting officer examined the driver's license and registration records of the defendant. Defendant asserts that officers cannot use such a check as a pretext for a stop and search, and cites Coston v. State, 252 Miss. 257, 172 So.2d 764 (1965) and Morgan v. Town of Heidelberg, 246 Miss. 481, 150 So.2d 512 (1963).
There is no evidence here that the license check was made as a pretext for a search. It is only natural for an officer, when arresting one, to check his driver's license and records when that car and person are reasonably believed to have been involved in the commission of a felony. As was stated in Wilson v. State, 186 So.2d 208 (Miss. 1966), the officer did not overstep the bounds of investigatory procedure.
We hold there was probable cause for the stopping of the car and the arresting of the defendant.
Under our law, there are two elements necessary for an officer to make a lawful arrest under the situation here existing  (1) that a felony has been committed, and (2) that he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it.
On the first element, the police department, having been notified that people were at the door of the grocery store between 2:30 and 3:00 o'clock in the morning and that a noise emanated therefrom, Captain Smith investigated and found as a fact that a lock on the door had been cut and was lying on the steps. There was ample reason to know that either a burglary or an attempted burglary had occurred. Burglary of a store building is a felony. Miss. Code 1942 Anno. § 2043 (1956). So is an attempted burglary. Miss. Code 1942 Anno. § 2017 (1956).
*256 On the second element, the police department received from a reliable source information that a dark colored, old model car had stopped within 30 feet of their informant; that three men went from it to the store, and, while there, some noise had been caused by them. Within just minutes of receiving this information, Captain Smith, on his way to investigate, passed a dark colored old model Chrysler in which three men were riding and which he says was the only car in that area. After having ascertained that a felony had actually been committed, the police department requested its policemen and those of Pascagoula to stop the car so described which was done. We think under these facts the officers had reasonable ground to suspect and believe that the persons in such car were the ones who had committed such felony.
These facts, in our opinion, constituted probable cause for the arrest.
The evidence does not disclose an unlawful search. The car having been lawfully stopped, the officers looked through the glasses of the car and saw the tools on the seat and on the floorboard. They could see the tools in the car without searching. Craft v. State, 254 Miss. 413, 181 So.2d 140 (1965), and cases cited therein. And, in addition, it was incidental to a lawful arrest. Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962), and authorities cited there. The tools were admissible in evidence.
Mississippi Code 1942 Annotated section 2044 (1956), defining the crime of possession of burglary tools, reads as follows:
"It is unlawful for any person to have in his possession implements, tools, or instruments designed to aid in the commission of burglary, larceny or robbery; and on the conviction of any person thereof, he shall be punished by imprisonment in the penitentiary not exceeding five (5) years, or in the county jail not exceeding one year. The carrying concealed about one's person, or in one's baggage, implements, tools, or instruments peculiarly adapted to aid in the commission of burglary, larceny or robbery, shall be prima facie evidence of intention to use them for such purpose."
The officers saw, out of the sack in the car, a bolt cutter (as heretofore shown the lock on the door of the store had been cut and had fallen to the steps), a short pry bar about a foot long, a long crowbar, several hammers, and other crowbars, together with "a wire-looking thing" which officer Fountain testified was what is commonly called a "burglar alarm jumper" and he described how it was used to circumvent the "setting off" of a burglar alarm.
When asked on cross-examination if this instrument might be used for other purposes, the witness was not sure. When asked if it could be connected with the taillight of a car and connected with a trailer so as to put current to the trailer, he "supposed" it could and stated: "If a fellow had a need for it, I guess he could."
Lt. Howard described this same instrument as a "burglar alarm jumper cable" and did not know of any other purpose for which it might be used. He didn't believe it would operate between a car and trailer, without a ground wire. He was asked, "I asked you if you knew that's the only thing it is used for?" (jumping burglar alarms), and he answered, "Yes, sir."
In Fuqua v. State, supra, in discussing articles within our statute, this Court held:
"* * * It is not necessary that the tool or article be designed and made solely for use as a burglar's tool. It may be designed for a lawful use and still be a burglar's tool. The other items, such as lights, kid gloves and wrenches, were shown by the proof to be useful adjuncts to burglar's tools, and as such became burglar's tools since all of the circumstances shown by the evidence justified a finding that they were possessed for the unlawful purpose of committing the *257 crimes named in the statute. The statute does not denounce as unlawful the possession of any particular implements, tools, or instruments. The possession of a particular article, or combination of articles, may or may not be unlawful under the statute, depending on whether the evidence reveals circumstances from which it may be inferred beyond a reasonable doubt that the possessor intended that he or some other person use the article or articles in aid of burglary or other similar crime. The Mississippi statute does not refer to a specific felonious intent, but a felonious intent must be proven. The State is not required to prove a specific intent to commit a particular crime; but it is sufficient if the circumstances justify the inference that the article or articles were possessed for such criminal purpose. Thus, a general intent is sufficient." 246 Miss. at 199-200, 145 So.2d at 154-55.
The burglar alarm jumper was peculiarly adapted to aid in the commission of burglary, and the jury was justified under all the evidence in finding that the other tools, including the bolt cutter, were designed to aid therein.
The other question raised by appellant is on the argument of counsel, objection to which was preserved by a bill of exception. There were several of these objections. Some objections were sustained, and some were overruled. We have carefully considered the matters objected to and, in view of the proof, we cannot say, and we do not believe, that such statements (although some of them showed perhaps more enthusiasm on the part of the district attorney than should have been exhibited) were harmful and resulted in prejudice to the defendant. We are, therefore, affirming the case.
Affirmed.
GILLESPIE, P.J., and BRADY, INZER, and ROBERTSON, JJ., concur.