HAWKINS, Justice,
for the Court:
George Powell appeals from a conviction in the Circuit Court of Grenada County of the crime of burglary of a business and a sentence of five years in the state penitentiary.
The shoe store of William Glen Malone, doing business as “U-Save Shoes” in Grenada, was burglarized on December 16, 1979, by breaking the glass of a window in the rear of the store for entry, and boots and shoes were removed from the building.
The appellant asserts constitutional violations, and his motion to suppress his confessions should have been sustained. The circuit judge over-ruled his motion.
Because a serious question on the record is presented, it is necessary we give as detailed a statement of the background to his confessions as relevant for our decision.
Gregory Harris, an officer of the Grenada Police Department, investigated the burglary. Working with him was Charles Douglas Evans, a city detective. Harris was acquainted with the defendant, and in the course of the investigation interviewed “a subject in reference to another incident,” who told him the defendant had some boots. Further, Harris said another individual came down to the police department, met him outside the office, and told Harris to “check out Mr. Powell and a Mr. Harbin, and he said they got those boots.” Harris did not go into any further questioning of this un-named individual as to how did he know appellant was implicated, “due to the fact that he (the informant) was a close friend of Mr. Powell’s and I just took his word.” Harris also stated the chronology of information received was the first “subject” told Harris he saw the defendant with some boots, and the defendant tried to give this subject a pair. About ten minutes later, Harris was told by telephone someone wanted to see him. In the hall of the police department Harris talked with this second individual, who he knew to be a friend of the defendant’s, “... and he briefly said that you can talk with George and James Harbin, I believe it was, James Harbin, in reference to those boots, and I just took it up as that due to I know the subject to be a pretty good friend of Mr. Powell, and I just took it as though he knew what he was talking about, and the next day after that I was looking for Mr. Powell, and it just so happened I ran into him on Horton Drive as I was leaving my house from dinner. I picked him up and advised him I wanted to talk with him.... ”
Harris further testified both the informants were friends of the defendant, who knew him pretty well. Harris had observed them in the same neighborhood, talking together, and in general conversation. “Any time I see people a great deal together I assume there’s some type of relationship.”
Harris took the defendant to the police station, where he was questioned by Detective Evans on December 19,1979, and after being fully warned of his constitutional rights concerning voluntary statements, the appellant signed a waiver, and then gave a written confession to Evans. The following day, December 20, 1979, he gave another written confession. On January 15, 1980, the grand jury of Grenada County indicted the defendant for the crime of burglary.
On the motion to suppress Evans testified he thought the defendant was under arrest when he questioned him. Harris, on the other hand, while conceding he was “detaining him,” further stated in his own mind, he did not have enough information to arrest him. He said he would not have tried to force the defendant to go with him to the police station had he refused, because “for one thing I didn’t feel as though or else was assured myself that I would have been doing everything perfectly I guess legal in making some type of, I guess, an arrest.”
When the defendant was taken to the police department he was not booked, but was questioned by Evans in an office there. Harris further stated, if the defendant had refused to accompany him when requested, “I would have advised my supervisor to what actually happened and see what else could be done legally.”
*328 The trial judge ruled there was insufficient ground showing probable cause of the arrest, but the defendant had not actually been arrested, that he was left in the front office of the police department unguarded, able to leave on his own volition. The court then ruled the questioning took place when the defendant was not in custody.
The record supports the confessions given to have been completely voluntary insofar as the circumstances surrounding the questioning by Detective Evans, who conducted the entire inquiry and obtained the written confessions.
If reasonable grounds existed for picking the defendant up on the street and questioning him there at the police station, then it follows the confessions, obtained after fully advising the defendant of all his constitutional rights, were admissible in evidence before the jury.
On the other hand, if no probable grounds existed for the detention of the defendant, the question arises whether or not he was placed in custody or under arrest prior to giving the first confession. If in fact he had been placed in custody without probable cause, under the previous decisions of this Court the confession would have been void. White v. State, 290 So.2d 616, 619 (Miss.1974); Jones v. State, 330 So.2d 597 (Miss.1976); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
We need not address the second question, because the record reflects in this case, despite the timorous attitude of Harris when he requested the defendant to accompany him to the police station for questioning, and the ruling of the trial court, that Harris did in fact have probable grounds to detain the defendant for questioning in the precise manner in which he conducted himself. No suggestion was made that the informants were not reliable, both were friends or acquaintances of the defendant, had been observed upon several occasions in conversation with the defendant in the neighborhood in which they lived. It is manifest Harris did in fact consider the informants reliable. They each imparted sufficient information to warrant Harris in detaining the defendant and questioning him. It was reasonable, proper and lawful for Harris to conduct himself as he did.
In Evans v. State, 275 So.2d 83 (Miss. 1973), p. 85, in quoting from a United States Supreme Court decision, we stated:
“The Court pointed out in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948):
“ ‘In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. (338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. * * * at 1890).’
“It has been said that ordinarily, when the trustworthy evidence makes it clear that an offense has been committed * * * and then available evidence makes it reasonable to infer that the particular person not necessarily was, but may have been, one of the offenders, most discreet and prudent men would order that person’s arrest.”
Again in Jones v. State, 358 So.2d 414 (Miss.1978), p. 416, we stated:
“Two elements are necessary to establish probable cause in order to arrest an individual without a warrant: (1) determination that a felony has been committed, and (2) reasonable grounds to suspect and believe the person proposed to be arrested committed the felony. McCollum v. State, 197 So.2d 252 (Miss.1967); Clanton v. State, 242 Miss. 734, 137 So.2d 180 (1962). The confidential informant told Detective Alves that he heard appellant admit he committed the robbery. Alves testified that the informant was reliable and trustworthy and that the informant had given him accurate and reliable information on two other occasions which led to the apprehension of criminals. In McCollum, this Court set out the following statements found in annotation to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, 1736-1739 (1959):
*329 “ ‘Probable cause’ or ‘reasonable grounds’ justifying an arrest without warrant exist where the facts and circumstances within the arresting officer’s knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a narcotics offense has been or is being committed. It is not required that probable cause be established solely by facts within the personal knowledge of the arresting officer. A combination of information and personal knowledge may raise the inference beyond opinion, suspicion, and conjecture to reasonable possibility. All information in the agent’s possession, fair inferences therefrom, and observations made by him are pertinent.” 197 So.2d at 255.
“Appellant was stopped and was told the reason for his detention, even though he was not told in actual words that he was under arrest. We conclude that the officers’ action was authorized and legal. * * * »
The motion to suppress the confessions was properly over-ruled by the trial court.
Even if the trial court had erred in overruling the motion to suppress the confessions, we would be hard-pressed to reverse the case because when the two confessions were tendered to the jury, the counsel for defendant was asked each time if there was an objection to its admission, and he replied “No, sir.”
Appellant next assigns as error the trial court’s refusal to declare a mistrial following Detective Evans testifying to oral statements made to him by the defendant, when he had not been informed of these statements in his motion for discovery. Appellant’s motion for discovery only requested written statements. In the hearing on his motion to suppress, the defendant’s counsel asked Evans if the defendant ever gave him an oral statement that he did not record. The officer replied “No, sir.” During the direct examination by the State of Detective Evans before the jury, no question was asked of him whether or not an oral statement had been made by the defendant in addition to the written confessions. The following transpired on cross-examination of Evans:
“Q. Did he (the defendant) ever tell you that when he and James Harbin were going up there, wherever they did come from, did he ever tell you that he knew James Harbin was going to break in the U-Save?
“A. Yes, sir.
“Q. He told you that he knew that before he went up there?
“A. Yes, sir, he said that they had discussed it.
“Q. But he did not put that in his statement?
“A. No, sir. At the time he was giving the statement he did not say that so I didn’t add it in.
“Q. Well, when did he make this statement?
“A. This was on the second instant that I talked with him. I talked — excuse me. It was on the first instant that I talked to him, just after I had taken the first statement.
* * * * * *
“Q. On the 19th?
“A. After he had already signed the first statement he added that part, but since he had already signed the statement I didn’t add it to the statement.”
Defense counsel did not attempt to impeach Detective Evans in the contradiction between his testimony before the jury, and his testimony in the motion to suppress. We do believe Detective Evans’ credibility could have been severely attacked in this discrepancy, but the Court did not commit error in over-ruling defendant’s motion for a mistrial following the introduction of this testimony, elicited as it was under the circumstances of this case. There is no evidence here of the State attempting any deception of the defendant.
Furthermore, the December 20, 1979, written confession, as well as the defend *330 ant’s own testimony at the trial, reveals he actively participated in this crime.
The appellant’s final assignment of error of there being insufficient evidence to support the offense of burglary has no merit.
It follows this case must be, and is hereby affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P.JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.