397 So.2d 1105 (1981)
Lawrence Ralph FLORENCE
v.
STATE of Mississippi.
No. 52503.
Supreme Court of Mississippi.
April 8, 1981.
Rehearing Denied May 27, 1981.
Gerald J. Diaz, Jr., Vick & Diaz, Jackson, for appellant.
Bill Allain, Atty. Gen., by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, LEE and BOWLING, JJ.
LEE, Justice, for the court.
Lawrence Ralph Florence was found guilty of armed robbery by the Circuit Court of the First Judicial District of Hinds County, Honorable William F. Coleman, presiding. The jury was unable to agree upon the punishment and the trial judge sentenced him to thirty-five (35) years with the Mississippi Department of Corrections, five (5) years suspended, and thirty (30) years to serve, with supervised probation for five (5) years. Florence has appealed here and assigns two (2) errors in the trial below.
On June 13, 1979, the branch office of Mississippi Bank located at Highway 80 and J.R. Lynch Street in Jackson was robbed of twenty-five hundred dollars ($2,500) by a man dressed as a woman, wearing a long-sleeve green dress, earrings, carrying a purse, and armed with a pistol. Later that night, Mrs. Derrean Williams saw a television newscast wherein a description was given of the clothes worn by the robber and she recognized them as belonging to her 17-year-old daughter, Gloria Williams. Another of Mrs. Williams' daughters verified that the clothes were not in the closet where they were usually kept, and consequently, Mrs. Williams had her son notify the police. When the police arrived, they *1106 were given the foregoing information and Mrs. Williams showed them a Polaroid photograph of her 17-year-old daughter and appellant. She further told them that the two were staying at the Summers Hotel on West Pearl Street. The officers compared the photograph to a mug shot at the police station and were able to identify appellant. His conviction record indicated that he had been involved in a number of law violations.
Upon arriving at the Summers Hotel, the officers ascertained that appellant was registered in a room under the name of "Joe Winter." They went to that room, knocked, and appellant came to the door. He was asked whether his name was Lawrence Florence and he replied in the negative, stating that he was Joe Winter. The officers, however, easily recognized him as Lawrence Florence. One of the officers looked into the room for Gloria Williams, saw an envelope on the floor in plain view, which, when examined, contained marijuana. The officers then arrested and searched appellant. The search revealed a receipt for purchase of a car in the sum of six hundred ninety-five dollars ($695.00) dated June 13, 1979, a receipt for payment of four hundred fifty dollars ($450.00) to local attorneys for services rendered dated June 13, 1979, and a set of automobile keys. Gloria Williams was found hiding in the bathroom and was also arrested. The individuals were placed in separate patrol cars while one of the officers, Iles, gathered up appellant's belongings and went to the hotel parking lot in search of appellant's automobile. He began to inventory the contents of the vehicle, recording them on an inventory slip carried for that purpose. Iles found a woman's black purse in the trunk of the automobile, which he opened and found to contain six hundred seventy-five dollars ($675.00). It was later identified, by serial numbers, as a part of the stolen money.
When the robber left the bank, one of the female tellers ran to the window, observed him enter a white automobile, and drive away. She noted the tag number, and the automobile was later found abandoned in the parking lot at Metrocenter. The clothing worn by the robber and a pillowcase containing five hundred dollars ($500.00) of the stolen money were found at the Metrocenter in the general proximity of the place where the automobile had been abandoned. The teller identified the vehicle and the clothing and at trial, identified the appellant as the robber. Gloria Williams testified for the State that appellant told her he was going to rob a bank and persuaded her to obtain the female clothes for him.[1]

I.
Did the lower court err in failing to suppress the evidence because of the illegal arrest of appellant?
The appellant contends that the officers did not have probable cause to arrest him. In order to arrest on probable cause without a warrant, it is necessary for the officers to determine (1) that a felony has been committed, and (2) that reasonable grounds exist to suspect and believe that the person to be arrested has committed the felony. Hurst v. State, 240 So.2d 273 (Miss. 1970); Powe v. State, 235 So.2d 920 (Miss. 1970).
In Michigan v. Defillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the United States Supreme Court held the probable cause which will sustain a warrantless arrest is not required to reach the level of certainty that the person arrested is guilty of the crime. It must be stronger than mere suspicion or belief held by the officers, but various factors may be taken under consideration in order to establish probable cause. The Court defined "probable cause" as follows:
"This Court repeatedly has explained that `probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. See Gerstein v. *1107 Pugh, supra, [420 U.S. 103] at 111, 95 S.Ct. 854 [861], 43 L.Ed.2d 54; Adams v. Williams, supra, [407 U.S. 143] at 148, 92 S.Ct. 1921 [1924], 32 L.Ed.2d 612; Beck v. Ohio, supra, [379 U.S. 89] at 91, 85 S.Ct. 223 [225], 13 L.Ed.2d 142 [3 Ohio Misc. 71, 31 Ohio Ops.2d 80]; Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329 [333], 3 L.Ed.2d 327 (1959); Brinegar v. United States, supra, [338 U.S. 160] at 175-176, 69 S.Ct. 1302 [1310-11], 93 L.Ed. 1879; Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280 [288], 69 L.Ed. 543 [39 A.L.R. 790] (1925)." 443 U.S. at 37, 99 S.Ct. at 2632, 61 L.Ed.2d at 349-350.
In Jones v. State, 358 So.2d 414 (Miss. 1978), quoting from McCollum v. State, 197 So.2d 252 (Miss. 1967), we said:
"In McCollum, this Court set out the following statements found in annotation to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, 1736-1739 (1959):
`Probable cause' or `reasonable grounds' justifying an arrest without warrant exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a narcotics offense has been or is being committed. It is not required that probable cause be established solely by facts within the personal knowledge of the arresting officer. A combination of information and personal knowledge may raise the inference beyond opinion, suspicion, and conjecture to reasonable probability. All information in the agent's possession, fair inferences therefrom, and observations made by him are pertinent.' 197 So.2d at 255." 358 So.2d at 416.
We are of the opinion that, under the facts and law in this case, the officers had probable cause to arrest appellant since (1) they had knowledge that an armed robbery had been committed, (2) they were informed that appellant was connected to the disguise used in the robbery, (3) they had knowledge of prior convictions of appellant for similar crimes, and (4) they had a substantial identification of appellant from photographs.

II.
Did the lower court err in failing to suppress evidence obtained from appellant's personal repository of possessions without a search warrant?
Officer Iles conducted a search of appellant's car shortly after his arrest, while the vehicle was situated in the hotel parking lot. Officer Iles referred to it as an inventory search contemporaneous with impounding the vehicle. Among other things, Iles discovered in the trunk of the vehicle a woman's black purse which, when opened, revealed $675.00 later identified as having been stolen from the bank. Appellant contends that opening the purse without a warrant was a violation of his Fourth Amendment rights.
In United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), Federal agents, acting without a warrant, arrested a suspect and seized a double-locked footlocker believed to contain illicit drugs. After taking the suspect and locker to a Federal building, they opened the footlocker without consent or warrant. Marijuana found in the locker was suppressed as evidence at trial. The United States Supreme Court affirmed the suppression and held that (1) the respondents had an expectation of privacy as to the contents of the footlocker, thus subjecting the search to the Fourth Amendment requirement that it be reasonable, (2) because the search would not fall within any of the recognized exceptions to a warrant requirement, the general rule applied that a warrantless search was unreasonable per se; and (3) the appropriate sanction of the agents' failure to comply with constitutional standards was the suppression of the evidence obtained by the illegal search.
Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), is a case factually similar to Chadwick and the present case. There, pursuant to confidential information, police officers surveilled, *1108 and later arrested, a suspect some few moments after he left the Little Rock airport in a taxicab. They seized a green suitcase belonging to the suspect and found in the trunk of the taxi. The suitcase was opened and revealed marijuana for which the appellant was convicted upon trial. The Arkansas Supreme Court reversed and the United States Supreme Court, citing Chadwick, affirmed, holding that in the absence of exigent circumstances, police must obtain a warrant before searching luggage taken from a vehicle.
The State relies upon the rule announced in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and contends that the police officers here were making a routine inventory of the contents of the vehicle, a reasonable procedure not a violation of the Fourth Amendment. The accused's automobile in Opperman had been impounded for multiple parking violations and the police, following standard procedures, inventoried the contents of the car. In so doing, they discovered marijuana in the glove compartment. Opperman was subsequently arrested and convicted for possession of the contraband. His motion to suppress the evidence from the warrantless inventory was denied. The State Supreme Court reversed on the ground that the evidence had been obtained in violation of the Fourth Amendment. In reversing that decision, the United States Supreme Court held that the police procedures followed there did not involve an unreasonable search in violation of the Fourth Amendment, that the expectation of privacy in one's automobile is significantly less than that in one's home or office. The Court further held that when vehicles are impounded, police routinely follow caretaking procedures by securing an inventory of the car's contents, and such procedures are reasonable under the Fourth Amendment. It was commented that the standard practice was followed in the Opperman case and there was no suggestion of any investigatory motive on the part of the police.[2]
The Eighth Circuit Court of Appeals addressed the instant question in United States v. Schleis, 582 F.2d 1166 (8th Cir.1978). There the defendant was arrested, handcuffed and taken to jail. While in jail, locked in a cell, his briefcase was searched without a warrant. It was in the exclusive control of the police, at a time when there was no reason to believe that any evidence in the briefcase might be destroyed, or that it contained explosives or other dangerous instrumentalities. In holding the search constitutionally invalid, the Court said:
"To permit this search under the inventory search rationale would extend that rationale beyond the scope contemplated by the Court in Opperman. See Note, Criminal Procedure, supra at 95. Luggage can be more readily reduced to possession and secured than an automobile. There is a greater expectation of privacy in the contents of luggage than in an automobile. Moreover, the valid governmental interests served by an inventory search could have been satisfied here by inventorying the locked briefcase as a unit. There was no necessity to open the briefcase and inventory its contents... . The only governmental interest that would be served by permitting this warrantless search would be to relieve the law enforcement officers of the inconvenience of obtaining a warrant before conducting an investigatory search... . Mere convenience is not a sufficient governmental interest to override the requirement of the Fourth Amendment warrant clause. Mincey v. State of Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In sum, the inventory search exception cannot be relied upon to justify the warrantless investigatory search of Schleis's briefcase. South Dakota v. Opperman, supra, 428 U.S. at 376, 96 S.Ct. 3092." 582 F.2d at 1173.
The record here does not indicate to what extent the purse was latched or closed. The evidence showed the following:
*1109 (1) An in-court identification of Florence as the robber given by the bank teller who was robbed.
(2) Testimony of two tellers that Florence was seen driving away from the bank in a car later abandoned at the Metrocenter, seized by the police, and determined to be the car used in the robbery.
(3) The clothing worn by the robber was the same given to Florence by his girlfriend.
(4) Florence told his girlfriend he was going to rob a bank and asked her to supply the women's clothing as a disguise, which she did.
(5) The clothing used in the robbery and a pillowcase containing $500.00 identified as a part of the stolen money were found at the Metrocenter in the general proximity of the abandoned car previously used by Florence.
The appellant neither testified nor introduced any witness in his defense. The evidence was uncontradicted, overwhelming and beyond reasonable doubt that appellant committed the crime with which he was charged. The admission in evidence of the black purse and money therein could not have contributed to appellant's conviction and could not have prejudiced him. Therefore, we think it unnecessary to decide whether or not the search of the purse was illegal.
In Austin v. State, 384 So.2d 600 (Miss. 1980), in discussing a constitutional violation, we said:
"However, we have carefully considered the entire record, and, in view of the overwhelming evidence of appellant's guilt beyond reasonable doubt, we hold that the error was harmless.[1] See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The judgment of the lower court is affirmed." (Footnote omitted). 384 So.2d at 601.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] He wore the clothes in committing the robbery.
[2] Opperman is distinguished from Chadwick and Sanders since the contraband was found in an unlocked glove compartment in the Opperman car, while in Chadwick and Sanders it was found in a locker/suitcase in the locked trunk of the automobiles.