SMITH, Presiding Justice,
for the Court:
Johnny Lee Covan was charged by indictment with the crime of rape. He was tried and convicted of that offense in the Circuit Court of Jackson County and sentenced to life imprisonment. He has appealed, assigning as grounds for reversal the following:
(1) There was no probable cause for his arrest.
(2) The trial court erred in refusing to dismiss the case upon the ground that the State had failed to comply with the court’s rules of discovery; and
(3) The trial court erred in refusing defense counsel’s request for a hearing regarding a photographic lineup at which appellant was identified.
A synopsis of the case follows.
A few minutes after midnight on the morning of August 3, 1976, a 31 year old woman was raped at knifepoint in her apartment in Pascagoula. The victim had retired for the night at 10:30 and was awakened between 11:45 and 12:00 to find, in her words:
A black man standing over me with a stocking over his head and a knife at my throat, and his hand was over my mouth. At first I thought it was just a dream. Then I realized that it wasn’t. I asked him what he wanted and he said he wanted a little loving. Then he pulled me on the floor and proceeded to rape me. He asked me if I had any money and I said I didn’t. He asked me if I had a telephone and I said I didn’t. I had lied, and then I said yes I do. He asked me where the telephone was, and I showed him. He cut the telephone cord. And he kept telling me to be quiet and don’t say anything or he would hurt me with the knife. Then after he cut the telephone cord, he told me to sit against the wall and not to say anything or make any kind of noise; if I did, he would come back and hurt me. Then he left out the front door. I sat there for a while. Then I checked to see if he was gone and I went upstairs to a *835 neighbors and knocked on their door and told them what had happened.
(R. 325).
The police were called as was the victim’s physician. The rapist was described as having been a black man, about 5 feet 11 inches tall, wearing a nylon stocking mask and naked from the waist up. The victim stated that his features had been discernible through the mask. It was discovered that entry into the apartment had been effected through a living room window, from which the screen had been removed. When the police arrived the victim was hysterical. The window was found open and the screen out. Prints were taken from the screen, bookshelves located by the window, and other objects, which it was thought the rapist might have touched. These prints were sent to the Federal Bureau of Investigation. The floor was vacuumed and the sweepings were sent to the Crime Laboratory.
The victim was examined by a doctor at 12:50 on the same morning, August 3, 1976. He found her to be in mild shock. Vaginal specimens were taken and submitted to a pathologist who found .sperm present of which 70 percent were “motile or moving.” The examination was concluded at about 1:30 in the morning, it having been estimated that intercourse had taken place perhaps two hours earlier.
Shortly after the crime had been committed, the victim moved to Northshore Apartments on Chicot Road. She began receiving mysterious telephone calls. About two months after the rape the victim had determined that the person making the calls was the same person who had committed the rape. Moreover, he identified himself on the telephone as having been the rapist. The victim then enlisted the aid of the police and a tracer was put on the line. Some time passed and, no more calls having been received, the tracer was removed. Thereafter, however, the rapist called two or thee more times. On the morning of January 9, 1977 he called and asked the victim if he could see her again and she encouraged him to do so in order that he might be apprehended. She called the police and arrangements were made to arrest the caller. During that day he called numerous times, and she consented to meet him that night. Police were alerted and when he called at about 8:15 that evening the call was prolonged to some 40 minutes. In this conversation the caller told the victim that he was not going to be able to meet her “as planned.” During the course of this conversation a detective stood beside the victim monitoring the call. The caller finally said “Uh oh, I have got to go; there’s a cop driving up.” He repeated these words and hung up. This information that the call was in progress had been radioed by a detective to all police units and they were directed to begin checking pay phones in the Chicot Road area and to be on the lookout for a black man approximately 5 feet 10 or 11 inches tall and weighing about 150 or 160 pounds.
Officer Gilbert was in the Chicot Road area pursuant to these radio directions, and all units proceeded and were on the lookout for a black man of the above description, who might be using a pay phone. As he proceeded along Chicot Road, Gilbert observed a black male of the approximate description using a pay phone. Gilbert made a U-turn into the parking lot directly in front of the phone booth having been informed by radio that the caller was “hanging up” or about to hang up. This corresponded with the actions of Covan which were being observed by Gilbert. Gilbert picked up appellant Covan and drove him to police headquarters. It was discovered that appellant had been on the police department’s suspect list compiled during the six months investigation of the rape. At headquarters Covan was fingerprinted and photographed. He was placed under arrest and given the Miranda warnings but refused to waive any of the rights explained to him, denying that he had been involved in the rape. He did allow specimens of his pubic hair to be taken.
Among fingerprints taken at the scene after the rape, the prints on the window screen (which had been removed from the *836 window) were positively identified as those of appellant Covan. Also, pubic hairs found on the carpet, after microscopic study, were found to be similar to those of Covan and in the opinion of an expert of the Federal Bureau of Investigation were from the same person as those taken from Covan which he had also examined. Fragments of pubic hair of negroid origin taken from the body of the victim could not be identified.
In the course of one of the telephone conversations between the victim and her unidentified caller, she had asked him why he had selected her and he had answered that he lived nearby and had seen her by the apartment pool several times. It developed at the trial that Covan lived in an adjoining apartment complex at the time the rape was committed. The caller also told the victim in the course of the last conversation on January 9 that he would not be able to meet her that night as planned earlier as he was expecting a friend from Gulfport. It was shown that the brother of Covan’s “live-in” girlfriend, who lived in Gulfport, was expected to visit Co-van that night.
Covan’s defense was an alibi in which he was supported by the testimony of his girlfriend. He also presented a number of witnesses who testified to his previous good character.
Covan was indicted and charged with the rape. The case against him was first tried on November 9, 1977. At the conclusion of the trial the jury was unable to agree and was discharged.
The case was tried a second time on January 18, 1978.
PROPOSITION NO. 1:
The first ground assigned for reversal is a contention that the police had no probable cause to arrest Covan. It is argued by appellant:
Based upon the length of time between the felony and the arrest, August 3,1976, until January 9, 1977; the variance between the description and the size of Appellant, 5' 10" to 5' 11" height and 150 to 160 pounds in weight to 6' in height and 179 pounds in weight; and the total lack of knowledge in the arresting officer or his arresting superiors that Appellant was involved in telephone conversations involving the felony for which Appellant was arrested; the arrest of Appellant was without Probable Cause.
The rape occurred on August 3, 1976. The victim had described her attacker as a black man of light complexion, approximately 5' 10" inches tall and weighing 170 pounds with broad shoulders and a slim waist. She testified to the several calls which she had received and described how she had enlisted the aid of the police for the purpose of apprehending her assailant. The rendezvous sought by the caller was arranged in an early call on January 9, 1977. That night, in a forty minute telephone conversation between the caller and the victim, she had a detective at her side. Radio instructions were issued to patrol units to enter the area and look for a black man using a pay phone. As Officer Gilbert was responding and driving down Chicot Road he observed appellant in a telephone booth and was told, by radio, that the caller was hanging up or about to hang up. At that time he observed Covan in the act of hanging up the telephone. Moreover, Covan generally answered the description of the attacker given police by the victim. The officer had positive information that a felony had been committed and at that time had reasonable grounds to believe that the man he observed hanging up the telephone had committed it. We have concluded that probable cause did exist for the arrest of Covan under all of the circumstances of the case.
Mississippi Code Annotated section 99-3-7 (1972), provides, among other things:
An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to *837 be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.
This Court has held that official information received by radio may form the basis of probable cause to arrest. Hamburg v. State, 248 So.2d 430 (1971), Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962).
Furthermore, the State points out in its belief, that suppression of evidence obtained after an allegedly illegal arrest was not asserted or urged at the second trial. It is necessary, where there has been a mistrial as the result of a hung jury, and the case must be tried anew, that a party make such objections during the second trial as may then appear to him to be appropriate in order to preserve his rights on appeal with respect thereto. We find no merit in the contention that there was no probable cause for the arrest of appellant.
PROPOSITIONS NO. 2 AND NO. 3:
Appellant’s propositions No. 2 and No. 3 may be considered together. It is contended in Proposition No. 2 that the trial court erred in declining to dismiss the case because the State had failed to comply with the court’s rules of discovery. In Proposition No. 3 appellant argues that it was fatal error to overrule a motion to put on two witnesses to show an improper pictorial “lineup” in which the victim identified Co-van.
As pointed out, this case was fully tried first on November 9, 1977 and the jury, having been unable to agree, was dismissed. The case was tried a second time on January 18, 1978. This second trial resulted in appellant’s conviction and it is from the judgment and sentence in that case that he now appeals. What seems to be a complete transcript of the proceedings in the first trial (mistrial) has been included in the record on this appeal. It is not shown how or in what manner appellant was prejudiced by any failure to disclose.
At the second trial, before proceeding, appellant moved to exclude “any eyewitnesses identification” on the part of the victim upon the ground that she had been shown a “picture lineup” at which neither appellant nor appellant’s counsel was present. In answer to the motion, the State pointed out that this was the first time the matter had been raised, and had not been raised at an omnibus hearing conducted by the court to dispose of preliminary matters a short time before, and that the real question was whether the victim, as a witness, could identify the appellant independently or not. The court denied the motion saying:
BY THE COURT: I think so. Let the record show that this case was tried in its entirety prior to this time, which resulted in a mistrial. It was about two months ago, wasn’t it?
BY MR. LOCKARD: Yes, sir. That’s the 3rd objection. It has been previously tried and gone through once before.
BY THE COURT: And the evidence was presented at that time, and in addition to that we had a hearing within the past week under the Circuit Court Rules which have been adopted. I think there has been ample opportunity to have hearings of this type. For that reason, I will overrule your motion.
Counsel for appellant then asked leave of the Court to make his record by calling two witnesses, Harold Biggs and Wayne McCarty. Counsel was asked what he intended to show by the witnesses. Counsel responded:
BY MR. BLACKWELL: I intend to show by those witnesses that a picture lineup was had whereby Johnny Mattox was asked to identify this defendant; that at that picture lineup, although the defendant was represented by counsel, neither the defendant nor counsel was informed or given any opportunity to be present at such picture lineup. And at that picture lineup and based on that picture lineup is the identification of this defendant.
*838 There was no contention or suggestion (and there is no contention now) that this was a matter hitherto unknown or newly discovered. Neither on the motion for a judgment notwithstanding the verdict of guilty or upon the motion for a new trial was the testimony or affidavit of either of the named witnesses (or any other evidence) produced or proffered to show that there had been any participation on the part of the victim in an improper identification procedure or lineup, pictorial or otherwise, or that her identification of appellant had been based upon or influenced by any such procedure. Pointing out that “This case was tried in its entirety prior to this time, which resulted in a mistrial. It was about two months ago, wasn’t it?” and further, “The evidence was presented at that time, and in addition to that we had a hearing within the past week under the Circuit Court Rules which have been adopted. I think there has been ample opportunity to have hearings of this type,” the court overruled the motion.
Upon the trial, the prosecutrix, called as a witness, identified the appellant as her assailant. She testified that although he had a nylon stocking over his face she was still able to see him sufficiently well and that, as the result of the opportunity she had to observe him on the occasion of the rape, she positively identified him as her attacker. No objection whatever was interposed by appellant to this testimony on the part of the victim. Later, she was cross-examined at great length as to her ability to see the defendant through the nylon stocking and she maintained throughout that she was, in fact, able to do so. She was not examined as to her participation in any picture lineup and no motion was made to exclude her testimony upon the ground that she had done so. On cross-examination she stated repeatedly that she identified appellant by her observation of him on the occasion of the rape and that her identification was beyond a reasonable doubt.
Following his conviction, appellant filed a motion for a judgment of acquittal notwithstanding the verdict and also a motion for a new trial. In each of these motions appellant assigns the same grounds. Of the several grounds assigned, none includes any reference to the so-called picture-lineup nor is there any assertion of prejudice in connection with any such supposed lineup. It is clear from the record that the victim made her identification • of appellant from her personal observation of him and not from any photograph or photographs. We find no merit in the contention that the action of the court as to this matter constituted reversible or prejudicial error. On a motion to exclude evidence, appellant actually did call Biggs as a witness, but failed to ask him a single question regarding a “picture lineup” or as to the victim’s participation therein. Nor is any prejudice shown to have resulted from failure to disclose evidence as required by the court’s discovery rules.
The verdict of the jury was supported by sufficient evidence and no prejudicial or reversible error has been shown to have occurred in the trial of the case. The judgment and sentence will therefore be affirmed.
AFFIRMED.
PATTERSON, C. J., ROBERTSON, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.