481 So.2d 798 (1985)
Gregory Tyrone JONES
v.
STATE of Mississippi.
No. 55843.
Supreme Court of Mississippi.
December 4, 1985.
*799 Richard H. Young, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
Gregory Tyrone Jones was tried and convicted in the First Judicial District of Hinds County, Mississippi, on May 10, 1984, of possession of more than one ounce of marijuana. He was sentenced to serve a term of three years in the custody of the Mississippi Department of Corrections and pay a fine of $3,000.00.
From his conviction and sentence, Jones appeals and assigns five errors:
1. That the lower court erred when it denied his motion to suppress a search warrant;
2. That the lower court erred when it allowed the state to introduce into evidence five envelopes of marijuana obtained by a search of his vehicle;
3. That the lower court erred when it permitted the state to introduce evidence regarding those five envelopes of marijuana from W.E. Patterson, criminologist with the Jackson Police Department, because the defendant, pursuant to a motion for discovery, had been furnished a copy of a lab report showing that only eighteen envelopes had been tested and defendant was prepared to defend only on the eighteen envelopes;
4. That the lower court erred when it allowed appellant's probation officer, Cindy Berry, to testify that appellant made an oral confession without first being advised by Officer Berry that the confession could be used against him; and,
5. That the verdict of the jury was against the overwhelming weight of the evidence.
On November 7, 1983, Officers Charles Foreman and Daniel Norton of the Jackson Police Department, secured a warrant authorizing the search of a residence at 2431 Eleanor Street, Jackson, Mississippi. The warrant was issued by Municipal Court Judge P. Hancock and was based on information received from a confidential informant. Information obtained from that informant and verified by a utility bill indicated that the residence to be searched was that of Gregory Tyrone Jones. Pursuant to the warrant, the residence was searched and a quantity of marijuana discovered. This information was radioed to Officers Seavey and Pitts who had Jones under surveillance at a local night spot. Jones was arrested for possession of marijuana. His vehicle was searched and additional marijuana discovered. Subsequent to his arrest, Jones confessed to Officers Foreman and Norton and, sometime later, to his probation officer, Cindy Berry.

I.

DID THE LOWER COURT ERR WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS SEARCH WARRANT BECAUSE THE AFFIDAVIT TO THE SEARCH WARRANT WAS HEARSAY INFORMATION THAT WAS NOT CORROBORATED BY PERSONAL OBSERVATION OR INDEPENDENT POLICE WORK?
At the hearing on a Motion to Suppress Search Warrant, Officer Charles Foreman testified to the following: that he had communicated with a confidential informant whom he had known for seven or eight months; that the informant had previously proven to be reliable and had provided information which had led to other arrests and convictions; that the informant had seen an unknown amount of marijuana at 2431 Eleanor Avenue on the afternoon prior to Jones's arrest; that, based only on the information provided by the informer, Officers Norton and Foreman asked for a search warrant from Municipal Court Judge Hancock; and, that the judge issued the warrant based solely on the officers' affidavit and their oral statements. Foreman admitted that no additional police work had been done in order to determine the truth of the informant's statements. Officer Norton testified to virtually the same set of events.
*800 The standard for issuing a search warrant was announced in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where the Court stated:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ..., including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud(ing)' that probable cause existed... . We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aquilar and Spinelli. (citations omitted)
Id. at 238-239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. This standard was adopted in Mississippi in Lee v. State, 435 So.2d 674 (Miss. 1983) and has been reiterated in Walker v. State, 473 So.2d 435 (Miss. 1985); Breckenridge v. State, 472 So.2d 373 (Miss. 1985); McCommon v. State, 467 So.2d 940 (Miss. 1985). Jones asserts that it was necessary for the police officers to determine through independent corroboration the accuracy of the informant's information. Based on Gates, Lee and their progeny, that assertion is erroneous. Under the totality of the circumstances, there was probable cause for the issuance of the search warrant. This assignment is without merit.

II.

DID THE LOWER COURT ERR WHEN IT ALLOWED THE STATE TO INTRODUCE INTO EVIDENCE FIVE ENVELOPES OF MARIJUANA WHICH WERE FOUND IN APPELLANT'S VEHICLE DURING A SEARCH SUBSEQUENT TO HIS ARREST?
Officer Ray Pitts testified that he and Officer Seavey "staked out" Cupid's Lounge in order to observe Gregory Jones. After about fifteen minutes, they received a call from Officers Foreman and Norton stating that marijuana had been found at Jones's residence and advising them to arrest him. When the officers approached Jones, he entered his car and attempted to leave. He was placed in custody and his car was searched. A quantity of marijuana was found under the front carpet on the driver's side. Jones asserts that the marijuana obtained during the search of his vehicle should not have been admitted as evidence because he had not been placed under valid arrest.
Officers Pitts and Seavey arrested Jones without benefit of an arrest warrant; therefore, the first question is whether the arresting officers had sufficient probable cause to make a valid warrantless arrest.
Rule 1.02 of the Mississippi Uniform Criminal Rules of Circuit Court Practice states, in part:
An officer may arrest any person without a warrant under the following circumstances:
* * * * * *
(3) When the officer has reasonable grounds to believe a felony has been committed and the person proposed to be arrested committed it.
The case law supports this rule. See Riddles v. State, 471 So.2d 1234 (Miss. 1985); Hanner v. State, 465 So.2d 306 (Miss. 1985); Gandy v. State, 438 So.2d 279 (Miss. 1983); Scruggs v. State, 412 So.2d 732 (Miss. 1981); Powell v. State, 394 So.2d 326 (Miss. 1981); Jones v. State, 358 So.2d 414 (Miss. 1978). In Swanier v. State, 473 So.2d 180 (Miss. 1985) this Court stated:
The existence of "probable cause" or "reasonable grounds" justifying an arrest without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. The determination depends upon the particular evidence and circumstances of the individual case.
*801 Id. at 186, quoting Smith v. State, 386 So.2d 1117, 1119 (Miss. 1980).
In the instant case, the officers had ample grounds to believe that a felony had been committed. Prior to the arrest, Officer Pitts had received information from the confidential informant that drugs would be under the front floorboard of the vehicle. More important was the information provided Seavey and Pitts, via police radio, that more than one ounce of marijuana had been located at Jones's residence. This Court has held that official information received by radio may form the basis of probable cause to arrest. Covan v. State, 374 So.2d 833 (Miss. 1979); Hamburg v. State, 248 So.2d 430 (Miss. 1971); Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962).
It was sufficiently established that Jones was the person who committed the felony. A power bill had been used to determine that the residence at 2431 Eleanor Street was that of Gregory Jones. Also, in addition to seeing the marijuana at Jones's house, the informant had seen Jones selling marijuana from his (Jones's) car and had so informed the police. Such was sufficient grounds for the officers to suspect and believe that Jones had committed the felony; therefore, the arrest was valid.
The law is clear that a police officer has the authority to search the person arrested incident to a lawful arrest. Sanders v. State, 403 So.2d 1288 (Miss. 1981); Anderson v. State, 397 So.2d 81 (Miss. 1981); Gregg v. State, 374 So.2d 1301 (Miss. 1979); Murphy v. State, 239 So.2d 162 (Miss. 1970); Butler v. State, 212 So.2d 573 (Miss. 1968); Amis v. State, 204 So.2d 848 (Miss. 1967). It is also apparent that an automobile passenger compartment may be subject to search incident to a lawful arrest. See Sanders, 403 So.2d 1288; Anderson, 397 So.2d 81. In Anderson, this Court noted:
The limited search of the automobile without a warrant was also lawful, being incident to the lawful arrest of the driver, Anderson... . The officer was justified in looking under the seat for a weapon. Once there, he had the right to seize the open money pouch which was in plain view. (citations omitted)
Id. In the case at bar, Jones was sitting behind the wheel of his car attempting to start it at the time he was arrested. A search of the vehicle revealed a bulge under the carpet near the place where Jones had been sitting. That search was incident to a lawful arrest and, therefore, proper. This assignment is without merit.

III.

DID THE LOWER COURT ERR IN PERMITTING THE STATE TO INTRODUCE INTO EVIDENCE FIVE ENVELOPES OF MARIJUANA THROUGH ITS WITNESS, W.E. PATTERSON, CRIMINOLOGIST WITH THE JACKSON POLICE DEPARTMENT?
Gregory Jones filed a general discovery motion on March 15, 1984, requesting, among others:
The results and reports of any scientific, medical or other tests, analysis, experiments, reports or studies made in connection with the instant case.
The court, by its order of May 4, 1984, granted that motion. Pursuant to the order, the state furnished a copy of a certificate of analysis, dated November 9, 1983, and signed by W.E. Patterson. The report included:
Item 1: Eighteen envelopes of plant material, each of which was tested and each was found to be marijuana. The weight of the plant material is 58.4 grams which is over one ounce.
At trial, W.E. Patterson was called by the state and qualified as an expert witness. He testified that he had tested State's Exhibit No. 1 (the envelopes found at Jones's residence) according to standard procedures and had found the substance contained therein to be marijuana. He further testified that he had weighed the marijuana and found it to weigh 58 grams, which is more than one ounce.
*802 He was asked on direct examination if he had tested the substance contained in State's Exhibit No. 2 (the material found in Jones's automobile). He stated that he had not. The prosecution requested and received permission for Patterson to return to the crime lab and run tests on State's Exhibit No. 2. The defense objected and was overruled, although the court did promise the defense an opportunity to interview Patterson prior to his return to the stand. Later, Patterson returned and testified that each envelope in State's Exhibit No. 2 contained marijuana.
Gregory Jones asserts that the five envelopes of marijuana should have been suppressed because the state had violated the discovery order. Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice requires that the prosecution disclose to the defense copies of lab reports or report or any test made. The defense conceded that the state had furnished a copy of the lab report on State's Exhibit No. 1; however, it appears that the state did not have a lab report on State's Exhibit No. 2 prior to trial. When it was determined that the contents of Exhibit No. 2 had not been tested, the prosecution was apprised simultaneously with the court and the defense.
There can be no question but that proper discovery should occur prior to trial. One very important reason for Rule 4.06 is to help eliminate trial by ambush and surprise; all litigants need to know what opposition they may face at trial. The decisions of this Court demonstrate a manifest commitment to the rule of discovery. See Henry v. State, 484 So.2d 1012 (1985); Barnes v. State, 471 So.2d 1218 (Miss. 1985); Harris v. State, 446 So.2d 585 (Miss. 1984); Ford v. State, 444 So.2d 841 (Miss. 1984); Box v. State, 437 So.2d 19 (Miss. 1983); Morris v. State, 436 So.2d 1381 (Miss. 1983).
Rule 4.06 provides that:
If subsequent to compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.
* * * * * *
Upon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit his counsel to make beneficial use thereof. (emphasis added)
In the case of Spots v. State, 427 So.2d 127 (Miss. 1983), this Court considered a situation similar to the present one:
The first witness ... was offered... . Identity of this witness's name was made about an hour before he was called. Defense counsel talked with him and was aware of what his testimony would be. When defense counsel objected to his testimony on the basis of the non-disclosure order, the trial judge offered the defense counsel more time to talk with the proposed witness. Defense counsel did not ask for a continuance and denied the offer to interview made by the court. Having declined the offer, defense counsel cannot now claim error.
In another case, Davis v. State, 472 So.2d 428 (Miss. 1985), this Court held that it was correct and commendable for a trial judge to grant a brief recess so that defense counsel could examine prior statements of a witness, statements which had not previously been made available through discovery. See also Cabello v. State, 471 So.2d 332 (Miss. 1985).
Likewise, in the present case, counsel for the defense was offered reasonable access to the results of Patterson's analysis of the five bags of marijuana. From the record we cannot say the defense did not avail themselves of the opportunity to interview Patterson. It is apparent, however, that no additional time was requested by the defense, nor did they ask for a continuance in *803 order to assess the effect, if any, which the new evidence might have on their case.
In the instant case, the court's procedure was consonant with the guidelines set out in the specially concurring opinion complimenting the majority opinion in Box v. State, 437 So.2d 19, 22-26 (Miss. 1983). (Robertson, J., specially concurring). The first guideline suggests that "the court's initial response should be a directive that the defense be given a reasonable opportunity ... to examine the newly produced documents, photographs, etc." Id. at 23. See also Cabello, 471 So.2d at 351-352 (Robertson, J., specially concurring). By giving the defense an opportunity to make adequate beneficial use of the newly ascertained information, the trial judge corrected any possible failure of the prosecution to produce the report on the marijuana found in Gregory Jones's automobile.

IV.

DID THE LOWER COURT ERR WHEN IT ALLOWED GREGORY JONES'S PROBATION OFFICER, CINDY BERRY, TO TESTIFY THAT HE CONFESSED TO HER WITHOUT BEING ADVISED THAT HIS CONFESSION COULD BE USED AGAINST HIM?
At trial, out of the presence of the jury, Cindy Berry testified that she worked for the Mississippi Department of Corrections; that she was Gregory Jones's probation officer; and that, after Jones was released from jail on bond, she had him meet her at her office where they discussed how he came to be arrested on the possession charges. During the discussion, Jones informed Berry that the marijuana found in the house and in the car belonged to him. Berry testified that she had not talked with any police officer concerning the possession case and had not been requested by any officer to ask Jones about the case. She stated that her purpose in questioning Jones was for her future reference in the event that he was indicted on these charges and because of the relevance to his probationary status. She stated that she did not advise Jones that she might testify against him. When questioned by the court, Berry verified that Jones was not under arrest at the time of their conversation. In the presence of the jury, Berry testified that Jones had confessed to her and had admitted that the marijuana involved in this case belonged to him.
Jones here contends that his confession should have been suppressed. He cites Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), where the U.S. Supreme Court held:
The prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege of self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action. (emphasis added)
Id. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.
Jones argues that the meeting between him and his probation officer constituted a "custodial interrogation." Because he was not informed of his Miranda rights, he asserts that his statements to Cindy Berry should have been suppressed.
In Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) the Supreme Court held that a person on probation who was meeting his probation officer at the request of that officer, was not "in custody" when he made his incriminating admissions:
He was, to be sure, subject to a number of restrictive conditions governing various aspects of his life, and he would be regarded as "in custody" for purposes of federal habeas corpus... . But custody in that context has been defined broadly to effectuate the purposes of the writ, ... and custody for Miranda purposes has been more narrowly circumscribed... . Under the narrower standard *804 appropriate in the Miranda context, it is clear that [the defendant] was not "in custody" for purposes of receiving Miranda protection since there was no "`formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."
104 S.Ct. at 1144, 79 L.Ed.2d at 421.
Per the decision of the U.S. Supreme Court in Murphy, Jones's confession to Berry was properly admitted.

V.

WAS THE VERDICT OF THE JURY AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
This Court has held that it will not "set aside a verdict of guilty unless it is clear that the verdict is the result of bias, prejudice or is manifestly against the overwhelming weight of the evidence." Simmons v. State, 301 So.2d 565, 568 (Miss. 1974). Furthermore, the Court has said:
Our general concern is whether there is in the record evidence sufficient to support the jury's verdict. As we have said repeatedly, the jury is charged with the responsibility for weighing and considering conflicting evidence and the credibility of witnesses... . Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that on the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. (citations omitted).
Dickerson v. State, 441 So.2d 536, 538 (Miss. 1983).
This final assignment of error may be distilled to five essential assertions: (1) that the state failed to prove actual or constructive possession; (2) that the state did not show Jones's confessions to have been voluntary; (3) that the court erred in allowing W.E. Patterson to testify as an expert witness; and, (4) that Patterson's method of weighing the marijuana was faulty.
There was ample evidence to support the jury's finding that Jones had possession of the marijuana in question. Not the least of that evidence was Jones's own confessions. Likewise, the voluntary nature of his confessions was supported by testimony, notwithstanding his assertions to the contrary.
Whether Patterson should have been allowed to testify as an expert was not a question for the jury; it involves only a question of law. Jones raises this issue here without support of any authority. "This Court does not as a general rule consider unsupported assignments of error." Harmon v. State, 453 So.2d 710, 712 (Miss. 1984) citing Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979).
Jones also argues that Patterson's method of weighing the marijuana was faulty. Patterson testified that he tested a portion of the substance in each envelope to determine if that substance was marijuana. He then weighed the entire amount to determine the total weight. From the total weight he deducted the tare weight which was determined by weighing one empty envelope and multiplying its weight by the total number of envelopes. Patterson also testified that the weight of the marijuana was 58 grams  well over one ounce. The verdict of the jury indicates that they believed both Mr. Patterson's techniques and results were accurate.
The facts of this case, considered in the light most favorable to the verdict, were sufficient to support that verdict. The judgment below is, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.